[No. 14196. Department Two. November 22, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. FERRY LINE AUTO BUS COMPANY *et al.*, *Appellants*.[1]

LICENSES—CARRIERS—AUTO STAGES—STATUTES. Under Rem. Code, § 5562-2, requiring the licensing of motor vehicles, and distinguishing "auto stages" as those used for the purpose of carrying passengers on a regular schedule of time and rates, and auto vehicles "for hire," as all motor vehicles, other than auto stages, operated for hire, auto vehicles operated on regular schedules and for regular fares must take out licenses for auto stages, notwithstanding they carried "for hire" signs; and it is immaterial that they operated only within the city limits, and not from city to city.

CRIMINAL LAW—PARTIES LIABLE—AGENTS—INTENT—CARRIERS—EMPLOYEES. An employee, operating an auto stage carrying a "for hire" sign, without knowledge that his employer had failed to take out an auto stage license, is criminally responsible for violation of the statute; lack of intent being no excuse for violation of a police regulation, and an agent of a corporation being presumed to have knowledge of its affairs brought under his control and management.

Appeal from a judgment of the superior court for King county, Grimshaw, J., entered February 17, 1917, upon a trial and conviction of operating auto stages without licenses. Affirmed.

*Shorett, McLaren & Shorett*, for appellants.

*Alfred H. Lundin* and *Erven H. Palmer*, for respondent.

HOLCOMB, J.—In this criminal proceeding, instituted by the state against the appellants for the alleged violation of chapter 142, Laws of 1915, p. 385 (Rem. Code, § 5562-1 *et seq.*), prohibiting the operation of auto stages without a license, appellants were found guilty and fined. The case was tried in the court below upon a written agreed stipulation of facts. From this stipulation it appears, that the appellant is a domestic corporation engaged in carrying passengers in automobiles under a contract entered into between

[1] Reported in 168 Pac. 893.

it and the port of Seattle; that the transportation of passengers in these automobiles was confined to the city limits of Seattle; that the automobiles were operated upon regular schedules and passengers were charged regular fares for transportation; that the corporation was the owner of five automobiles, three of which had a seating capacity of twenty-two passengers each, and two of which had a seating capacity of thirty-five passengers each; that appellant Collins was an employee of the bus company, and as such drove one of the automobiles and received the fares from the passengers, and that he had no other interest in the business; that the bus company failed, neglected and refused to take out "auto stage" licenses, but had placed "For Hire" signs upon all of its automobiles. The bus company contended in the court below, and contends here, that the vehicles in question are not "auto stages," but are autos for hire. Appellant Collins contends that there is nothing in the statute which justified the conviction against a mere employee of the company when it is not shown by the state that this individual defendant had any knowledge of the fact that the company did not have an auto stage license.

So far as the appellant corporation is concerned, the question presented is simply whether or not automobiles operated entirely within the limits of the city should be licensed as "auto stages" or as "automobiles for hire." Appellant corporation quotes Webster's definition of a stage as "a wagon which runs between two places for conveying passengers or goods," and "a large vehicle running from station to station for the accommodation of the public." The statute, Rem. Code, § 5562-2, subds. 2 and 4, Laws 1915, ch. 142, p. 386, defines these vehicles in comprehensive and discriminating terms as follows:

"(2)   'Automobile' shall mean the ordinary four-wheeled motor vehicle, and shall be synonymous with the term 'motor vehicle' except as otherwise herein provided; . . .

3—99 WASH.

"(4) 'Auto stage' as distinguished from 'automobile' shall mean a motor vehicle used for the purpose of carrying passengers, baggage or freight on a regular schedule of time and rates."

Subdivision 11 of that section provides that

" 'For hire' shall be taken to mean all motor vehicles, other than auto stages, operated for hire."

The chapter also provides, § 5562-1, that, except as otherwise provided by law, this act shall be controlling upon the registration and numbering of motor vehicles; upon the use of motor vehicles upon the public highways, and upon penalties for the violation of any of the provisions of this act.

It is clear from the facts that, since the bus company was operating motor vehicles upon the streets on regular schedules and for regular fares, they came within the definition of subdivision 4 of the foregoing section, while the company had only taken out licenses of automobiles "For Hire," or motor vehicles *other* than auto stages operated for hire. No other construction can be given the definitions of the statute, and the contention that the statute is not aimed at the operation of auto stages within the municipality cannot be sustained. The statute in its definitions does not define auto stages as automobiles running from city to city, or town to town, or station to station; but clearly includes all automobiles or motor vehicles used for the purpose of carrying passengers, baggage, or freight on a regular schedule of time and rates, wherever operated.

As to the criminal liability of appellant Collins, it is true that he was a mere employee of the company, and it was not shown by the state that he had knowledge of the fact that the company did not have an auto stage license. But he did have notice and knowledge that the company used the "For Hire" signs upon its vehicles which, coming within a separate definition contained in a public act, gave him knowledge that the vehicles were not licensed as auto stages. In *State v.*

*Ferry Line Auto Bus Co.*, 93 Wash. 614, 161 Pac. 467, it was said that no person committing, or aiding or abetting in the commission of, an unlawful act could save himself from punishment by showing that he acted under the direction or as the agent or servant of another. In *State v. Burnam*, 71 Wash. 199, 128 Pac. 218, is a very fair exposition of the law as to the guilt of a servant or agent for the violation of a police regulation enacted for the protection of the public health or safety, regardless of wrongful intention or knowledge. The lack of intent does not excuse the infraction of a police regulation. *State v. Nicolls*, 61 Wash. 142, 112 Pac. 269, Ann. Cas. 1912B 1088. An agent of a corporation is presumed to have that knowledge of its affairs particularly under his control and management which, by the exercise of due diligence, he would have ascertained. *Overland Cotton Mill Co. v. People*, 32 Colo. 263, 75 Pac. 924, 105 Am. St. 74. Where the manner of conducting a business is the offense, and the agent or servant controls or aids and assists in the regulation of the business, he may be liable as well as the principal. 1 McClain, Criminal Law, § 190.

We think, therefore, that both the corporate and individual appellants were liable under the law and were properly convicted. Judgment affirmed.

ELLIS, C. J., MOUNT, CHADWICK, and MORRIS, JJ., concur.