LUCILLE C. JONES v. ROBERT LEE HOLT and ORVIS ELWOOD
CARROLL.

(Filed 2 November, 1966.)

**1. Automobiles § 44—**

The burden is upon defendants upon the issue of contributory negligence and defendants must allege and prove facts sufficient to raise the inference of contributory negligence as a reasonable conclusion and not a mere conjecture in regard thereto.

**2. Negligence § 25—**

In determining the sufficiency of the evidence of contributory negligence to require the submission of that issue to the jury, defendant's evidence must be considered in the light most favorable to him, giving him the benefit of all reasonable inferences in his favor and disregarding plaintiff's evidence except insofar as plaintiff's evidence tends to show negligence on the part of the plaintiff as alleged in the answer as a contributing cause of the injury.

**3. Automobiles §§ 9, 17—**

Where the intersection of streets in a municipality has authorized electric traffic signals, requirements in regard to stopping are controlled by the traffic lights and not by G.S. 20-154(b).

**4. Same—**

When a motorist is faced by an amber light it cautions him that the red signal is about to appear and that it is hazardous to enter, and he may proceed into the intersection only if a stop at the stop line cannot be made in safety, and a provision of an ordinance that the driver of a vehicle faced with the amber light must stop before the nearest crosswalk if indicated by a stop line, but if the stop cannot be made in safety the driver might proceed cautiously across the intersection, will not be construed to require a driver "to run on the yellow" even though he may not be able to stop before encroaching upon the crosswalk when this may be done in safety.

**5. Automobiles § 44—Evidence held insufficient to raise issue of contributory negligence in stopping suddenly when faced with amber traffic signal.**

Defendant's evidence tended to show that plaintiff's automobile was at least 80 feet from the curb line when plaintiff was faced with a yellow traffic light, that she was moving 15 miles per hour, that at that speed it would have taken her nearly four seconds to clear the six-lane intersection, that the yellow light remained on for three seconds only, that if she had looked in her rear view mirror she would have seen defendant truck driver moving slowly upgrade some 20 feet behind her vehicle, and that she stopped suddenly without signal, bringing her vehicle to rest beyond the stop line but before its front reached the curb line of the intersecting street. *Held:* The evidence is insufficient to warrant the submission of the issue of contributory negligence to the injury in plaintiff's action for injury sustained when the truck crashed into the rear of her vehicle.

APPEAL by plaintiff from *Patton, E.J.,* at the 2 May 1966 Schedule "D" Session of MECKLENBURG.

This is an action for personal injuries alleged to have been received when the rear end of the automobile driven by the plaintiff was struck by a truck owned by the defendant Holt and driven by the defendant Carroll. Both vehicles were proceeding northwardly on South Cedar Street in the City of Charlotte toward the intersection of that street with West Trade Street. At the intersection a traffic light had been erected by the City of Charlotte pursuant to an ordinance. Carroll was driving the truck in the course of his employment by Holt and was following the automobile driven by the plaintiff.

The complaint alleges that the plaintiff brought her vehicle to a stop at the intersection in obedience to a red signal by the traffic light and that, after coming to a stop, her vehicle was struck in the rear by the truck, knocking it forward and causing her to sustain injuries. The plaintiff alleges that Carroll, and so Holt, operated the truck without maintaining a proper lookout, at a speed which was in excess of that which was reasonable and prudent under the prevailing conditions, followed the automobile of the plaintiff too closely, and failed to obey the traffic light. The answer denies negligence on the part of the defendants and pleads contributory negligence by the plaintiff in that she stopped suddenly and without warning, giving no signal of her intention to do so, and blocked the street in front of the truck.

The defendants moved in this Court for permission to amend their further answer, which motion is allowed. The amendment alleges that the ordinance of the City of Charlotte provides, as to a driver faced with a yellow light:

> "Yellow or 'caution.' A person driving a vehicle approaching the signal must stop before the nearest crosswalk at the intersection or at another point if indicated by a stop line, but if the stop cannot be made in safety, a vehicle may be driven cautiously through the intersection."

The amendment further alleges that the city had erected, pursuant to such ordinance, a traffic signal at the intersection which emitted red, yellow and green signals; and that the plaintiff violated the ordinance by failing to stop at the stop line marked on the pavement 20 feet back from the intersection, by making a stop which could not be made in safety, and by failing to drive into or through the intersection, which at the time was clear of traffic.

The plaintiff offered evidence tending to show:

Trade Street is 60 feet wide and has three lanes of traffic in each

direction at this intersection. The yellow signal remains on at this traffic light for three seconds. On Cedar Street, the edge of the pedestrian crosswalk, first reached by these vehicles, is marked by a white line 13 feet from the curb line of Trade Street, and the stop line is 7 or 8 feet further from the intersection.

The collision occurred about 10 a.m., the weather being clear and the pavement dry. The investigating police officer found the plaintiff's automobile in the crosswalk with its front end almost to the curb line of Trade Street, and debris at the rear of her vehicle 20 feet from the Trade Street curb line. There were no tire marks on the pavement.

The plaintiff drove along Cedar Street at a speed of 20 to 30 miles an hour in the block next preceding this intersection. The light was on the right hand side of the street. It turned yellow when the plaintiff was two car lengths or more from it. A car in front of her proceeded on through the intersection. When she got to the point where she was supposed to stop, the light was red and she stopped. She had been fully stopped for a second before her car was struck in the rear by the truck. At some point in the block preceding the intersection, she had seen the truck in her rear view mirror. It was then two car lengths behind her. She gave no hand signal of her intent to stop but applied her brakes.

The ordinance of the City of Charlotte was introduced in evidence and contains the provision above quoted.

The defendants offered evidence tending to show:

The truck was an International tandem dump truck with eight rear wheels. It was empty. It was following the plaintiff's car at a distance of about a truck length. Carroll saw the light turn to yellow. At that time the automobile was "past the stopping zone." (This evidently relates to the front end of the automobile.) Carroll intended to stop and applied his brakes when the light turned to yellow. The truck was then 20 feet behind the plaintiff's car and 40 feet from the intersection. It was going not over 10 miles an hour and its air brakes were in "working order."

The plaintiff began to stop when she was "right on" the pedestrian crosswalk. She was then past the stop line. When she came to a stop, the front of her car was "about even with the curb on Trade Street." The front wheels of the truck stopped on the stop line, just where Carroll expected to stop. The tail lights and one bumper guard were knocked off the plaintiff's automobile by the force of the collision but it was not knocked forward.

The plaintiff brought her car to a sudden stop. There was no indication that she was going to stop until her automobile had gotten "to or past" the stop line. There was traffic on Trade Street but at

the moment of the collision this traffic in all six of the traffic lanes was stopped for the lights facing it.

Over the objection of the plaintiff, the trial judge submitted to the jury the issue of contributory negligence.

The jury answered both the issue of negligence and the issue of contributory negligence in the affirmative. From the court's judgment denying recovery to the plaintiff, in accordance with the verdict, the plaintiff appeals, assigning as error the submission of the issue of contributory negligence and the court's instructions thereon.

*Warren C. Stack for plaintiff appellant.*
*Helms, Mulliss, McMillan & Johnston for defendant appellees.*

LAKE, J. A defendant, relying upon contributory negligence for his defense, must allege in his answer facts which, if true, constitute negligence by the plaintiff and must prove the negligence so alleged. G.S. 1-139; *Moore v. Hales,* 266 N.C. 482, 146 S.E. 2d 385. The burden of proof being upon the defendant, the issue of contributory negligence should not be submitted to the jury if the evidence is not sufficient to support an affirmative finding.

In determining the sufficiency of the evidence to justify the submission of this issue to the jury, we must consider the defendant's evidence in the light most favorable to him, draw therefrom all reasonable inferences in his favor, and disregard the evidence of the plaintiff except insofar as it tends to show negligence by the plaintiff as alleged in the answer. *Butler v. Wood,* 267 N.C. 250, 148 S.E. 2d 10; *Moore v. Hales, supra; Howell v. Lawless,* 260 N.C. 670, 133 S.E. 2d 508; *Kennedy v. Smith,* 226 N.C. 514, 39 S.E. 2d 380. However, the issue may not properly be submitted to the jury unless there is evidence from which the inference of contributory negligence may be drawn by men of ordinary reason, evidence which merely raises a conjecture being insufficient. *Bruce v. Flying Service,* 234 N.C. 79, 66 S.E. 2d 312. That is, the test is the same as that which is applied in passing upon a motion for judgment of nonsuit on the ground of the failure of the plaintiff's evidence to show negligence by the defendant, except with reference to the matter of causation, it being sufficient that negligence by the plaintiff be merely a contributing cause of the injury.

The material allegations of the answer are that the plaintiff "suddenly and without warning and without first seeing that she could do so in safety, and without giving any signal of her intention, and in violation of Section 20-154 of the General Statutes of North Carolina, stopped her car without giving the defendant Carroll the two or three extra steps of stopping distance that he needed to come

to a complete stop, and blocked the highway * * * unnecessarily, and * * * failed to keep a proper lookout."

The evidence, interpreted in the light most favorable to the defendants, shows: Trade Street is 60 feet wide from curb to curb and has six lanes of traffic, three in each direction. The yellow traffic light remains on at this intersection for three seconds. The stop line for vehicles on Cedar Street is 20 feet south of the curb line of Trade Street. The length of the plaintiff's car was 18 feet. Before reaching the intersection, the plaintiff had observed the truck in her rear view mirror, it then being two car lengths back of her. The defendant Carroll had a clear view of the traffic light and of the rear of the plaintiff's automobile. The truck was 40 feet south of the intersection when the light turned to yellow, and 20 feet behind the plaintiff's automobile, thus putting the front of her car virtually at the curb line of Trade Street. The air brakes of the truck were in good condition. It was empty. The plaintiff was then driving 15 miles per hour and the truck 10. Both were going slightly upgrade. The plaintiff stopped her car suddenly. It was not knocked forward, and its front wheels were practically at the curb line of Trade Street following the collision. The front wheels of the truck came to rest on the stop line painted on the pavement, but the front end of the truck protruded beyond that line and struck the rear of the plaintiff's automobile. The city ordinance with reference to the duty of a driver faced with a yellow light is as above quoted.

*White v. Cothran,* 260 N.C. 510, 133 S.E. 2d 132, dealt with a factual situation similar to the present except that in that case the municipal ordinance involved was not put in evidence. Denny, C.J., speaking for the Court, said:

"In a factual situation like that presented on this appeal, the right of the plaintiff to enter the intersection involved and her duty to stop before entering such intersection, were controlled by the electrically operated traffic signal and not by G.S. 20-154(b).

"* * * The meaning and force to be given to electrically operated traffic control signals, in the absence of a statute or ordinance, 'is that meaning which a reasonably prudent operator of an automobile should and would understand and apply. *Coach Co. v. Fultz,* 246 N.C. 523. Traffic signals of the kind here described are in such general use that it is, we think, well known by motor vehicle operators that a red traffic light is a warning that the highway is closed in order to permit those using the intersecting highway safe passage through the intersection. Hence, prudence dictates that he should stop. The mean-

ing of the amber light is likewise recognized. It cautions but not in the positive tones of the red light. It warns that red is about to appear, and that it is hazardous to enter. It affords those who have entered on the green light the opportunity to proceed through the intersection before the crossing traffic is invited to enter.' * * * *Wilson v. Kennedy,* 248 N.C. 74, 102 S.E. 2d 459."

The ordinance of the City of Charlotte does not change this meaning of the yellow traffc light except to the extent of permitting a driver faced with a yellow light to proceed into and through the intersection "cautiously," if, but only if, a stop at the stop line cannot be made in safety. The ordinance cannot fairly be construed to require the driver to proceed into a busy intersection when it would be dangerous to do so. A driver is not thus compelled by it to endanger himself, his passengers, and occupants of other vehicles merely to avoid encroachment upon the then unoccupied pedestrian crosswalk. In the absence of the most compelling language, an ordinance should not be construed to require a driver to "run on the yellow."

The defendants' evidence, itself, shows the rear end of the plaintiff's automobile was at least 80 feet from the far curb line of Trade Street when the yellow light appeared. She was moving 15 miles an hour. At that speed it would have taken her nearly four seconds to clear Trade Street, but the yellow light remained on only three seconds. To cross in safety she would have been obliged to increase her speed. The question is not whether it would have been negligence for the plaintiff to embark upon a crossing of Trade Street with its six lanes of traffic poised to move when the light facing them turned to green. The question is whether it was negligence for the plaintiff to hold back from such a venture.

At 15 miles per hour, the plaintiff could and did bring her vehicle to a complete stop before reaching the intersection, without injury to her passengers from the stop itself. No pedestrian was then upon the crosswalk. There was, therefore, no foreseeable risk of injury to anyone in the course of action which the plaintiff pursued, unless she should have foreseen that if she stopped she would be struck by the truck which was following her. The testimony of the defendant Carroll is that this truck was then proceeding 10 miles an hour upgrade, and 20 feet behind the rear end of the plaintiff's automobile, with the yellow traffic light plainly visible to its driver. The plaintiff's evidence is that at some point within the last block traversed by these vehicles, she looked in her rear view mirror and saw the truck following her "a couple of car lengths back."

The lookout she was required to maintain as she approached this

intersection was a lookout in the direction in which she was traveling, not a look into her rear view mirror. However, according to the defendants' evidence, if she had looked into her rear view mirror, she would have observed a very slowly moving truck 20 feet behind her automobile. At the most, she can only be held to the exercise of reasonable care in the light of what she would have seen if she had looked to her rear. Had she done so, she would have seen nothing to cause a reasonable person in her position to believe that the driver of this truck could not bring his vehicle to a stop in time to avoid colliding with her car. She was entitled to assume that the driver of the truck behind her had observed the yellow light, would see her brake light and would exercise reasonable care to bring his own vehicle to a stop. *Hobbs v. Coach Co.*, 225 N.C. 323, 34 S.E. 2d 211. Denny, C.J., also said in *White v. Cothran, supra:*

> "When a motorist approaches an electrically controlled signal at an intersection of streets or highways, he is under the legal duty to maintain a proper lookout and to keep his motor vehicle under reasonable control in order that he may stop before entering the intersection if the green light changes to yellow or red before he actually enters the intersection. Likewise, another motorist following immediately behind the first motorist, is not relieved of the legal duty to keep his motor vehicle under reasonable control in order that he might not collide with the motor vehicle in front of him in the event the driver of the first car is required to stop before entering the intersection by reason of the signal light changing from green to yellow or red."

In view of the defendants' evidence with reference to the speed at which the two vehicles were traveling, the distance between them, the color of the traffic light, and the nature of the intersection facing the drivers, we find no evidence of negligence by the plaintiff in stopping her automobile rather than venturing forward into the intersection. It was, therefore, error to submit to the jury the issue of contributory negligence.

By reason of this error, the verdict and judgment must be vacated and the plaintiff awarded a new trial. The issues to be submitted at that trial and the instructions then to be given to the jury must, of course, depend upon the evidence then introduced. Since there must be a new trial, it is not necessary to consider the remaining assignments of error as the questions involved therein may not arise upon such new trial.

New trial.