WATSON SEAFOOD & POULTRY COMPANY, INC. v. GEORGE W. THOMAS, INC. AND ROBERT PRIDGEN

No. 36

(Filed 17 December 1975)

**1. Automobiles § 20— passing at intersections — negligence per se**

Violations of the provisions of G.S. 20-150(c) prohibiting the passing of a vehicle going in the same direction at any intersections designated and marked by the Board of Transportation by appropriate signs and at any street intersections in cities and towns have been held by the Supreme Court to constitute negligence *per se.*

**2. Criminal Law § 1— absence of criminal intent — act or omission of act as crime**

The Legislature may make the doing of an act or the omission to do some act a crime even in the absence of criminal intent.

**3. Automobiles § 7; Criminal Law § 1— lack of knowledge that act is criminal — punishment proper — application to motor vehicle laws**

Both federal and state courts have specifically held that it is not a violation of due process to punish a person for certain crimes related to the public welfare or safety even when the person is without knowledge of the facts making the act criminal, and the bases for inclusion of violations of motor vehicle and traffic laws within the scope of this rule are that (1) the requirement of proving intent or guilty knowledge would make it impossible to enforce such laws in view of the tremendous number of petty offenses growing out of the host of motor vehicles upon our roads and (2) the punishments for such violations are usually a small fine.

**4. Automobiles §§ 20, 77— passing at intersection in city — no notice of city limits — negligence per se**

When an employee of plaintiff who was driving plaintiff's pickup truck overtook and attempted to pass defendant's truck at an intersection in the Town of Rose Hill, he was guilty of negligence *per se,* and this was so without regard to his knowledge of whether he was within the city limits of Rose Hill.

Chief Justice SHARP dissenting.

Justice COPELAND joins in the dissenting opinion.

APPEAL as of right by plaintiff pursuant to G.S. 7A-30(2) to review decision of the Court of Appeals reported in 26 N.C. App. 6, 214 S.E. 2d 605 (1975) (opinion by Morris, Judge, with Vaughn, Judge, concurring, and Clark, Judge, dissenting), finding no error in trial before *Crumpler, District Judge,* 14 October 1974 Session, DUPLIN County District Court.

Civil action to recover property damages to plaintiff's 1973 Chevrolet pickup truck growing out of a collision between the pickup truck operated by plaintiff's driver, Roger Parker, and defendants' 1967 G.M.C. tractor-trailer which plaintiff alleged was being negligently operated by defendant, Robert Pridgen, as agent of defendant, George W. Thomas, Inc. Defendants answered denying negligence on the part of defendant Pridgen and alleging that plaintiff's driver was guilty of contributory negligence. It was admitted that each driver was acting within the course and scope of his employment and as agent of his respective employer at the time of the collision.

Roger Parker testified that on the 1st day of August 1973 at about 9:00 a.m. he and corporate defendant's driver were operating their respective trucks in the same direction on rural paved road 1146 and that he came up behind the truck operated by defendant Pridgen, blew his horn and started to pass. As he came alongside the G.M.C. tractor-trailer, defendant Pridgen turned left into plaintiff's truck. He at no time observed any turn signals as he approached the truck. He further testified that a narrow dirt road intersected the rural paved road. There were no city limit signs in the area although there was a "Welcome to Rose Hill" sign off the shoulder of the road. "It was in the same position where regular highway signs are. It was not the regular original city limit type sign." Parker described the area in which the accident took place as "really growed up . . . corn, woods down one side, and a field over on the other, corn and stuff I guess. Crops." He said that "There were no regulatory markings of any intersections in that area at the time of the accident." He further stated that "I was hooked up at that time with a hatchery down at Rose Hill where the old Rose Hill Hardware used to be."

James Masters, the Chief of Police of Rose Hill, described the area in these words, "It is not built up in between Church Street to 1146. It's no houses in there. A corn field lies in there. Or tobacco. This is out in farm country." The Chief of Police also stated that he investigated the accident and that he gave defendant Pridgen a ticket for improper equipment because the left rear directional signal on the tractor-trailer was not working. Pridgen entered a plea of guilty to the charge. Mr. Parker was not charged. Masters further testified that city limit signs had been erected since the accident but that none were there on the date of the accident.

Defendant Pridgen testified that prior to the collision he heard no horn and did not see plaintiff's truck. He was going about ten miles per hour when he started making his turn.

It was stipulated that the accident occurred within the city limits of Rose Hill.

The jury answered the issues submitted as follows:

Was the plaintiff's property damaged by the negligence of the defendant Pridgen?

Answer: "Yes."

Did the plaintiff through the negligence of Roger Parker contribute to his damages?

Answer: "Yes."

Plaintiff appealed from judgment entered upon the jury verdict.

*Crossley & Johnson, by Robert White Johnson, for plaintiff appellant.*

*Horton, Conely & Michaels, by Richard B. Conely, for defendant appellee.*

BRANCH, Justice.

Plaintiff's sole assignment of error is that the trial court erred in instructing the jury concerning passing at an intersection.

The trial judge instructed the jury on the issue of contributory negligence as follows:

If you answer it [the first issue] "yes," you go to the second issue, which is as follows: "Did the plaintiff by his own negligence—that is Mr. Parker—contribute to his own injury or damage, as the defendant Pridgen alleges?"

This means that the defendant Pridgen is claiming that the plaintiff Parker is guilty of what we call "contributory negligence." By contributory negligence we mean the lack of ordinary care on the part of the plaintiff, which cooperating and concurring with the actionable negligence of the defendant was also a proximate cause of the plaintiff's injury or damage.

Now Mr. Pridgen contended, as I have related before, that when he left that morning his lights were working, and even after the accident one light was still burning.

He testified that he was not going 35 miles an hour, he was going about 15, and he braked it down to around 10 to make his turn. Now let me give you the law relating to this particular case on overtaking and passing on a two-lane highway. Our motor vehicle laws require that the driver of a vehicle overtaking and undertaking to pass another vehicle traveling in the same direction on a two-lane highway shall ascertain that the left lane is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.

Further he shall not overtake and pass at an intersection, that is a street intersection, that is a street intersection in a city or town, or a highway intersection marked as such by the State Highway Commission. Now the evidence we have before us, it is stipulated by the parties that this was in the town of Rose Hill and that it is a street intersection.

Further that he shall pass at least two feet on the left of the vehicle being passed.

Now in this connection if you find that the plaintiff Parker did not use that degree of care and prudence that is required under our laws, which I have just explained to you, then you would answer this issue "yes," as to the second issue. This would mean that Parker is not entitled to recover anything, because he would be guilty along with Pridgen of doing some negligent act which was one of the proximate causes of this accident. If you find to the contrary, your answer to that shall be "no."

G.S. 20-150 (c) provides:

(c) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any railway grade crossing nor at any intersection of highway unless permitted so to do by a traffic or police officer. For the purpose of this section the words "intersection of highway" shall be defined and limited to intersections designated and marked by the Board of Transportation

by appropriate signs, and street intersections in cities and towns.

We considered the effect of G.S. 20-150(c) in the case of *Adams v. Godwin,* 252 N.C. 471, 114 S.E. 2d 76, and there held:

> . . . The meaning of the section is that one motorist may not pass another going in the same direction under either of two conditions: (1) At *any* place designated and marked by the State Highway Commission as an intersection; (2) at *any* street intersection in any city or town. . . . (Emphasis ours.)

All of the evidence in this case shows that the intersection involved had not been designated and marked as an intersection by the Highway Commission (now the Board of Transportation).

[1] Initially we recognize that, absent specific Legislative exemption, a person who violates the provisions of a safety statute may be held to be negligent as a matter of law. This doctrine was clearly enunciated by Justice Walker in the case of *Stone v. Texas Co.,* 180 N.C. 546, 105 S.E. 425, as follows:

> . . . The question as to whether the violation of a statute, or ordinance, especially one intended to safeguard the citizens of a town and their property, is negligence *per se,* or only evidence of negligence, has been discussed extensively by this Court in several cases, but the law of this State was finally settled in *Leather v. Tobacco Co.,* 144 N.C., 330; where it was held that it is negligence *per se,* and as a matter of law, and the rule in regard to it, as stated by Judge Thompson in his treatise on Negligence (vol. 1, sec. 10), was adopted, and is substantially as follows: When the legislature of a State, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act, the general conception of the courts, and the only one that is reconcilable with reason, is that a failure to do the act commanded, or doing the act prohibited, is negligence as mere matter of law, or otherwise called negligence *per se;* and this, irrespective of all questions of the exercise of prudence, diligence, care, or skill. So that if it is the proximate cause of hurt or damage to another, and if that other is without

contributory fault, the case is decided in his favor, and all that remains is to assess his damages. The jury, of course, must find the facts. . . .

Violations of the provisions of G.S. 20-150(c) have been held by this Court to constitute negligence *per se. Carter v. Scheidt,* 261 N.C. 702, 136 S.E. 2d 105; *Adams v. Godwin, supra; Cole v. Lumber Co.,* 230 N.C. 616, 55 S.E. 2d 86; *Donivant v. Swaim,* 229 N.C. 114, 47 S.E. 2d 707.

Defendants rely heavily on the case of *Adams v. Godwin, supra,* as authority for their position that the trial judge correctly charged. In that case, all the evidence showed that plaintiff and defendant were both proceeding in an easterly direction on Main Street in the corporate limits of the Town of Benson and plaintiff attempted to pass as the vehicles approached an unmarked intersection with Fayetteville Street. Defendant, without giving a signal, turned her vehicle to the left across the center line of the street and into the right side of plaintiff's automobile. The jury answered issues in favor of plaintiff and defendant appealed. Defendant assigned as error the following portion of the trial judge's charge:

> . . . "I instruct you, ladies and gentlemen, that if you are satisfied by the greater weight of the evidence that there were no signs put there, no appropriate signs put there by the State Highway Commission, then it would not constitute an intersection within the meaning of that statute and would place no duty upon the driver of the Edsel automobile."

In granting a new trial on the ground that the charge permitted plaintiff to ignore the intersection because it was not marked by the Highway Commission, we held the charge to be erroneous since G.S. 20-150(c) requires one to observe street intersections within corporate limits *whether marked or unmarked.* Although very similar factually, this case is readily distinguishable from the case before us because in *Adams* there was no contention or evidence that plaintiff did not know she was in the town limits of Benson. The crux of the question here presented is whether plaintiff is excused from the application of the doctrine of negligence per se because he did not know and did not have reasonable grounds to know that he was in the Town of Rose Hill. In this connection, plaintiff relies on the cases of *Dawson v. Jennette,* 278 N.C. 438, 180 S.E. 2d 121, and *Kelly v. Ashburn,* 256 N.C. 338, 123 S.E. 2d 775, to

sustain his contention that the trial judge did not correctly charge.

The pertinent holding in *Kelly v. Ashburn, supra,* is correctly summarized in headnote 4 of that case, to wit:

> Where a motorist who is unfamiliar with an intersection approaches it along a street upon which a stop sign had been erected but had been removed, his rights in entering the intersection must be judged by the rule of care of an ordinarily prudent man under the circumstances confronting him, unaffected by the fact that a stop sign had been erected upon the street upon which he was traveling.

In *Dawson v. Jennette, supra,* Justice Lake approved by holding in *Kelly v. Ashburn, supra,* as it related to passing in intersections. The principles set forth in *Kelly* and *Dawson* would allow us to easily solve the crucial question before us. However, these cases are distinguishable from instant case because they construed the provisions of G.S. 20-158, *Vehicle Control Signs and Signals.* G.S. 20-158 specifically provides that the failure to stop, in violation of its provisions, shall not be considered contributory negligence per se in any action for injury to person or property.

**[2]** We find ample authority for the proposition that the Legislature may make the doing of an act or the omission to do some act a crime even in the absence of criminal intent. The doing of such act or the failure to do the required act constitutes the crime and the knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in such cases is whether the defendant did the act prohibited or failed to do the act which the statute required. *State v. McLean,* 121 N.C. 589, 28 S.E. 140; Accord: *United States v. Balint,* 258 U.S. 250, 66 L.Ed. 604, 42 S.Ct. 301; *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 54 L.Ed. 930, 30 S.Ct. 663; *Borderland Construction Co. v. State,* 49 Ariz. 523, 68 P. 2d 207; *People v. Fernow,* 286 Ill. 627, 122 N.E. 155; *People v. Snowburger,* 113 Mich. 86, 71 N.W. 497; *State v. Manos,* 179 S.C. 45, 183 S.E. 582. Cases applying this rule to violations of motor vehicle laws are collected in the appendix of an article by Francis Bowes Sayre, Public Welfare Offenses, 33 Colum. L. Rev., p. 87:

> . . . *Commonwealth v. Pentz,* 247 Mass. 500, 509-510, 143 N.E. 322 (1924) (driving so as to endanger the safety

or lives of public); *Commonwealth v. Vartanian,* 251 Mass. 355, 146 N.E. 682 (1925). *Accord: Commonwealth v. Coleman,* 252 Mass. 241, 147 N.E. 552 (1925) (using a motor vehicle without the authority of the owner) ("the act irrespective of intent was made criminal," *id.* 244); *People v. Harrison,* 183 App. Div. 812, 170 N.Y. Supp. 876 (2d Dept. 1918) (causing motor vehicle to be operated in a careless or negligent manner); *People v. Schoepflin,* 78 Misc. 62 (N. Y. County Ct. 1912) (driving a motor car without a distinctive number corresponding to a proper certificate of registration; conviction affirmed though court "satisfied that this defendant meant to do no wrong." *Id.,* at 63); *State v. Ferry Line Auto Bus Co.,* 99 Wash. 64, 168 Pac. 893 (1918) (employee held liable for operating an auto stage without a license although he had no knowledge that employer had failed to secure the required license); *Hays v. Schueler,* 107 Kan. 635, 193 Pac. 311 (1920) (failure to carry on motor car a rear red light); *Provincial Motor Cab Co. Ltd. v. Dunning,* [1909] 2 K.B. 599 (failure to carry on motor car a rear light to illuminate number plate); *Rex v. Labbe, supra* note 15 (owner of automobile held liable for violation of speed regulations by another driving owner's car). . . . *People v. Billardello,* 319 Ill. 124, 149 N.E. 781 (1925); *People v. Johnson,* 288 Ill. 442, 123 N.E. 543 (1919); *People v. Fernow,* 286 Ill. 627, 122 N.E. 155 (1919); *People v. Hughes,* 226 Ill. App. 135 (1922); *State v. Dunn,* 202 Iowa 1188, 211 N.W. 850 (1927); *Ogburn v. State,* 168 Ark. 396, 270 S.W. 945 (1925). . . .

[3] Both federal and state courts have specifically held that it is not a violation of due process to punish a person for certain crimes related to the public welfare or safety even when the person is without knowledge of the facts making the act criminal. This is particularly so when the controlling statute does not require the act to have been done knowingly or willfully. *Williams v. North Carolina,* 325 U.S. 226, 89 L.Ed. 1557, 65 S.Ct. 1092; *State v. Balint, supra; Shevlin-Carpenter v. Minnesota, supra.* The bases for the inclusion of violations of motor vehicle and traffic laws within the scope of this rule are that (1) the requirement of proving intent or guilty knowledge would make it impossible to enforce such laws in view of the tremendous number of petty offenses growing out of the host of motor vehicles upon our roads and (2) the punishments for

such violations are usually a small fine. We would not extend the rationale of this rule beyond petty offenses involving light punishment nor would we extend its operation to any crime involving moral delinquency.

G.S. 20-150 (c) is a safety statute enacted by the Legislature for the public's common safety and welfare. The statute does not contain the words "knowingly," "willfully" or any other words of like import. It was the obvious intent of the Legislature to make the performance of a specific act a criminal violation and to thereby place upon the individual the burden to know whether his conduct is within the statutory prohibition.

[4]  We hold that when Roger Parker overtook and attempted to pass defendant's truck at an intersection in the Town of Rose Hill, he was guilty of negligence per se and this was so without regard to his knowledge of whether he was within the city limits of Rose Hill. We recognize the seemingly harsh result which arises from the application of this rule; however, the application of safety statutes to the individual must be balanced with the protection afforded the general public. This Court has diluted the severity of the rule by holding that in order to show actionable negligence, a person who seeks damages for injury to person or property must show a causal connection between the violation of the safety statute and the injury or damage alleged. *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331; *Conley v. Pierce-Young-Angel Co.*, 224 N.C. 211, 29 S.E. 2d 740. It follows that in cases in which the defendant pleads contributory negligence as a bar to plaintiff's recovery, the defendant has the burden of proving by the greater weight of the evidence that plaintiff's negligence was one of the proximate causes of his injury or damage. *Warren v. Lewis*, 273 N.C. 457, 160 S.E. 2d 305; *Jones v. Holt*, 268 N.C. 381, 150 S.E. 2d 759; *Owens v. Kelly*, 240 N.C. 770, 84 S.E. 2d 163. Here the trial judge charged the jury that in order to answer the issue of contributory negligence against plaintiff they must find that plaintiff's driver was "guilty along with Pridgen with doing some negligent act which was one of the proximate causes of the accident."

We note, in passing, that the charge was favorable to plaintiff in that it imposed only the degree of ordinary care upon plaintiff as related to the finding of contributory negligence resulting from his alleged violation of safety statutes. On the

other hand, the charge on contributory negligence was erroneous and unfavorable to plaintiff because it did not place the burden of proving that issue on defendant. *Warren v. Lewis, supra; Jones v. Holt, supra.* These matters were not assigned as error or argued in plaintiff's brief and were therefore not before us for decision.

The decision of the Court of Appeals is

Affirmed.

Chief Justice SHARP dissenting.

To the majority's decision that G.S. 20-150 (c) requires a holding that plaintiff was guilty of negligence *per se* when he attempted to pass defendant's tractor-trailer under the facts of this case (set out below), I dissent.

Rose Hill is an incorporated town with a population under 5,000. The main approach to the town is U. S. Highway No. 117. On 1 August 1973 plaintiff was driving his pickup truck on rural paved road No. 1146 toward Rose Hill when he overtook defendant's diesel log-truck. Preparatory to passing, plaintiff "gave his signal, pulled out and blew the horn and came around." When he came alongside the truck its driver (defendant Pridgen) drove to his left of the center of the road without having given any signal of his intention to turn into "a little dirt road," which intersected No. 1146 at that point. There was, of course, a collision. The "little dirt road," which was about the width of the log truck, happened to be Pine Street and within the corporate limits of Rose Hill.

There were, however, no signs or markings of any kind on No. 1146 to warn a motorist that he was approaching an intersection; nor had any corporate-limits sign been posted on No. 1146 to advise the traveler he was within a city or town. Further, the area through which plaintiff had approached the intersection of Pine Street and No. 1146 was devoid of urban characteristics and gave the traveler no clue that "according to law" he was in a "city or town." "It was about a half a mile further down the road before the sign said 'Rose Hill.' "

The Chief of Police of Rose Hill described the vicinity of the accident as follows: "It's not a built-up area. . . . It's no houses in there. A corn field lies in there. Or tobacco. *This is out in farm country.*" (Emphasis added.) In attempting to

turn into Pine Street defendant was "headed back to the woods, back to . . . haul more lumber." The rear, left-turn signal on defendant's log truck was not working, and the Chief of Police, who investigated the accident, gave defendant Pridgen a "citation for improper equipment; directional signals not working."

The result of the majority's decision in this case is this: Any motorist who attempts to pass another vehicle at any intersection within any area which has been incorporated into a city or town violates G.S. 20-150(c) and is guilty of negligence *per se* even though (1) the area appears to be rural and no posted sign informs the traveler that in contemplation of law he has left the country and entered a town; and (2) the motorist has no knowledge, no reason to suspect, and no opportunity to ascertain that the intersection lies within corporate limits. In my view this construction of G.S. 20-150(c) put an unreasonable burden on the motorist and the General Assembly never intended to impose strict liability upon a motorist under such circumstance. The court should never adopt a construction which results in palpable injustice or undesirable consequences when the language of the statute is reasonably susceptible to another construction. *Puckett v. Sellars*, 235 N.C. 264, 69 S.E. 2d 497 (1952) ; 7 Strong's N. C. Index 2d *Statutes* § 5 (1968).

G.S. 20-150(c), as the majority opinion makes clear, is a safety statute which fixes the standard for safe conduct at certain intersections; it does not prohibit passing at all intersections. Passing at intersections outside of cities and towns is prohibited only if the Board of Transportation "by appropriate signs" has marked the intersection. The foregoing limitation denotes (1) the legislative expectation that the Board would mark all intersections at which passing would create an unreasonable risk of harm to the traveling public and (2) the legislative awareness that a motorist on an unfamiliar highway outside of developed urban areas could not reasonably be expected to obey the statutory mandate not to pass at an intersection unless he had been given notice that the intersection was ahead.

At the time of the enactment of G.S. 20-150(c) the General Assembly undoubtedly took notice of the prevailing custom of cities and towns to post their limits on all public highways, roads, and streets entering the municipality, and it legislated on the assumption that the motorist would have notice when he

crossed the line between town and country. Typical street intersections in cities and towns are only "a city block" apart and are highly visible. Intersections are the rule and, in urban areas, the motorist needs no notice that they are there.

Thus, it appears the legislature equated marked rural intersections with the city street intersections. It relied upon the marking of intersections to give the requisite notice in rural areas and upon the character of the street and its surroundings to give the notice in towns and cities. Where no sign warns of an intersection in a rural area, there is no notice of its existence and passing does not violate the statute. Similarly, where the street intersection is within unmarked corporate limits and in an area which lacks all the essential characteristics of a city there is also no notice of its existence, and passing therein does not violate the statute.

Under the majority decision, albeit the intersection and the area surrounding it have undergone no physical change, passing which was reasonable and lawful one way would become unlawful and negligence *per se* the next merely because the town extended its limits—and this irrespective of whether the new limits had been posted. Such a result does not comport with the purpose of G.S. 20-150(c) to set the standard of reasonable driver conduct at an intersection, for the reasonableness of conduct is not changed by the mere act of incorporation.

The spirit and intent of the legislature control the construction of a statute. 7 N. C. Strong's Index 2d, *Statutes* § 5 (1968). Thus, as applied to the situation we consider here, I believe the proper construction of G.S. 20-150(c) is this: When the limits of a town are unmarked a motorist who passes or attempts to pass another vehicle at an unmarked intersection within the corporate limits does not violate G.S. 20-150(c) unless he knows that he is within the town limits or the character of the intersection and surrounding area is such that any reasonable person would know he was in town. This construction in no way weakens the doctrine of negligence *per se,* for if the statute is violated the violation is negligence *per se.*

It is needless to say that a statute "should not be interpreted in such a manner as to render it unconstitutional, if a reasonable constitutional interpretation can be given." *Highway Commission v. Industrial Center,* 263 N.C. 230, 231, 139 S.E. 2d 253, 254 (1964).

The violation of G.S. 20-150(c) is a misdemeanor punishable by fine or imprisonment, G.S. 20-176. However, the Chief of Police, when he cited defendant for "improper equipment, directional signals not working," did not cite plaintiff for illegally passing at an intersection. I apprehend that any attempt to hold plaintiff criminally liable would raise the serious question whether the application of G.S. 20-150(c) to the facts of this case could satisfy the constitutional requirements of due process. Surely its application to a motorist who had no knowledge he was inside corporate limits, no reason whatever to suppose he was, and every reason to think he was not, is not only an unreasonable and arbitrary application of the statute but one which bears no reasonable relation to the legislative purpose.

The majority notes, quite correctly, that a motorist who does not know the rear lamp on his vehicle has burned out may be held liable for a violation of G.S. 20-129(d). It is argued, by analogy, that one who—for no matter what reason—does not know he is in a town should be equally liable for a violation of 20-150(c) when he attempts to pass at an unmarked intersection. This argument is not apropos. The law requires every motorist to keep his rear lamp "in good working order." He is responsible for his automobile and has control of it. No motorist, however, is responsible for posting corporate limits and for ascertaining the location of the limits of any city, town, "Middlesex village or farm" through which his journey may take him.

For errors in the charge, my vote is for a new trial.

Justice COPELAND joins in this dissent.