IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-427

 Filed: 20 October 2020

Perquimans County, Nos. 16CRS000382, 17CRS000003

STATE OF NORTH CAROLINA

 v.

MICHAEL RAY WATERFIELD, Defendant.

 Appeal by Defendant from judgment entered 7 November 2018 by Judge

Marvin K. Blount III in Perquimans County Superior Court. Heard in the Court of

Appeals 31 October 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Amy
 Bircher, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R.
 Grant, for the Defendant.

 DILLON, Judge.

 One of the most fundamental concepts in criminal law is mens rea, the guilty

mind. Historically, our society punished people for committing a crime for

committing certain acts if they had some intent to commit the act.

 Over time, this mens rea requirement has loosened. We have seen the rise of

strict liability crimes, crimes that do not have an intent element. One class of crimes

where strict liability has flourished is so-called regulatory crimes, meaning criminal
 STATE V. WATERFIELD

 Opinion of the Court

offenses that have no common law analogue and are enacted to encourage behavior

that advances the public welfare.

 This case involves several of these regulatory crimes.

 The General Assembly enacted legislation authorizing the Marine Fisheries

Commission and its Director to regulate coastal fishing. The legislature also provided

that any violation of a Commission rule was a misdemeanor criminal offense.

Pursuant to its authority, the Commission enacted rules prohibiting fisherman from

leaving gill nets and crab pots unattended for a certain amount of time.

 Defendant Michael Waterfield, a fisherman, was convicted of violating these

regulations after he left gill nets and crab pots unattended for too long. Defendant

argued that he is not criminally liable because he lacked any mens rea – or intent –

to break the Commission rule. He claims he was sick and had to leave his equipment.

 As explained below, Defendant has presented a series of compelling arguments

for why the proliferation of these strict liability crimes undermines foundational

principles of our State’s criminal law jurisprudence. But as an intermediate appellate

court, we are bound to follow controlling precedent. Under that precedent, these

offenses are strict liability crimes that do not require the State to prove intent. If the

law concerning these sorts of strict liability regulatory offenses should be changed,

that change must come from our Supreme Court or from our General Assembly.

 -2-
 STATE V. WATERFIELD

 Opinion of the Court

 I. Facts and Procedural History

 Defendant is a licensed commercial fisherman. In late 2016, a Marine Patrol

officer was on boat patrol and came across an unattended gill net. The officer

identified the net as belonging to Defendant because it had his name and boat number

on it.

 A marine fisheries proclamation in effect at the time required a person

operating this type of gill net to remain within 100 yards of the net. The officer

observed the area but did not see anyone in the vicinity of the net.

 Somewhere between thirty minutes and one hour later, Defendant approached

the officer and asked why the officer was near his net. The officer then gave

Defendant a citation for an unattended gill net.

 An hour later, the officer found crab pots with markers identifying them as

belonging to Defendant. The officer pulled up one of the pots and saw that there were

dead and decomposing crabs inside.

 Several days later, the officer returned Defendant’s crab pots to the water with

plastic tags on the pots so that they could not be opened without cutting the tags off.

The officer returned to check on the pots seven days later and found that all the tags

were still in place, indicating that the crab pots had not been fished.

 The officer cited Defendant for two violations of marine fisheries regulations:

one for leaving crab pots in the water for more than five consecutive days and another

 -3-
 STATE V. WATERFIELD

 Opinion of the Court

for leaving crab pots containing edible species not fit for human consumption. The

officer used a form citation for these offenses, a form that contained language that

Defendant was being charged with committing these regulatory violations

“unlawfully and willfully.”

 Defendant was convicted of all charges in district court and appealed to

superior court. During his jury trial in superior court, Defendant explained that, as

for the unattended gill net, he was struggling with throat cancer and, after setting

out his nets, he got sick and had to go home. He further explained that he got into

an automobile accident on the way home. As a result of these unfortunate events,

Defendant was unable to return and retrieve one of his nets.

 As for the crab pots, Defendant testified that he did fish those pots and that he

“cut the tags off,” despite the officer’s testimony to the contrary. On cross-

examination, Defendant acknowledged that he had a number of past violations for

similar failures to retrieve gills nets or crab pots. He explained that, given the scope

of marine fisheries regulations, “[i]f you go out and fish, you gonna get tickets.”

 Because there were no pattern instructions for these regulatory offenses, the

trial court proposed to instruct the jury on the elements of the offenses by tracking

the specific language in the applicable regulations or proclamations. The regulations

did not include any intent element. Defendant did not object or request any

additional instructions.

 -4-
 STATE V. WATERFIELD

 Opinion of the Court

 After closing arguments, the trial court asked Defendant’s counsel, “is there a

contention that the law is something different than what has been provided to the

Court?” Defense counsel responded that he was “just arguing the charging

document,” which presumably was a reference to the use of the phrase “unlawfully

and willfully” in the citation. The trial court then stated, “What I’ve been provided,

I guess, from the law is the elements of the crime do not require willfulness.” The

trial court then instructed the jury using the language of the applicable provisions

and did not instruct the jury that these criminal offenses required proof of any form

of criminal intent.

 The jury convicted Defendant of the unattended gill net offense and the offense

of leaving crab pots in the water for more than five days. The jury acquitted him of

the second crab pot violation. The trial court consolidated the two convictions for

judgment and sentenced Defendant to 20 days in jail, suspended for one year of

supervised probation, and a $200 fine. Defendant appealed.

 II. Analysis

 A. Strict liability for the charged offenses

 Defendant first argues that the trial court committed plain error by failing to

instruct the jury that the State must prove his violations were willful. He contends

 -5-
 STATE V. WATERFIELD

 Opinion of the Court

that the offenses with which he was charged must include some form of mens rea and

cannot be strict liability offenses.

 Defendant concedes that these arguments were not preserved by request or

objection at trial and thus we review only for plain error. N.C. R. App. P. 10(a)(4);

State v. Gregory, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). “For error to constitute

plain error, a defendant must demonstrate that a fundamental error occurred at

trial.” State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Plain error

should be “applied cautiously and only in the exceptional case” where the errors

“seriously affect the fairness, integrity or public reputation of judicial proceedings.”

Id. at 516-17, 723 S.E.2d at 333.

 Whether a particular offense is a strict liability offense is a question of law that

this Court reviews de novo. See State v. Watterson, 198 N.C. App. 500, 503, 679 S.E.2d

897, 899 (2009). As a leading criminal law treatise observes, “[f]or several centuries

(at least since 1600) the different common law crimes have been so defined as to

require, for guilt, that the defendant’s acts or omissions be accompanied by one or

more of the various types of fault (intention, knowledge, recklessness or—more

rarely—negligence); a person is not guilty of a common law crime without one of these

kinds of fault.” 1 Wayne R. LaFave, Substantive Criminal Law § 5.5, Strict Liability

(3d ed. 2017). “But legislatures, especially in the 20th and 21st centuries, have often

undertaken to impose criminal liability for conduct unaccompanied by fault.” Id.

 -6-
 STATE V. WATERFIELD

 Opinion of the Court

 Our General Assembly is among the state legislatures that began imposing

strict liability over the last century-and-a-half. When challenges to these strict

liability crimes arrived at our Supreme Court, that Court held that it is “within the

power of the Legislature to declare an act criminal irrespective of the intent of the

doer of the act. The doing of the act expressly inhibited by the statute constitutes the

crime.” State v. Hales, 256 N.C. 27, 30, 122 S.E.2d 768, 771 (1961). The

determination of whether “criminal intent is a necessary element of a statutory

offense is a matter of construction to be determined from the language of the statute

in view of its manifest purpose and design.” Id.

 Our Supreme Court later refined these principles in the context of what are

often called “public welfare” crimes. See Watson Seafood & Poultry Co. v. George W.

Thomas, Inc., 289 N.C. 7, 13, 220 S.E.2d 536, 541 (1975). In Watson, the Court

addressed a traffic law prohibiting passing another vehicle at a railway crossing or

highway intersection. Id. The Court explained that “it is not a violation of due

process to punish a person for certain crimes related to the public welfare or safety

even when the person is without knowledge of the facts making the act criminal. This

is particularly so when the controlling statute does not require the act to have been

done knowingly or willfully.” Id. at 14, 220 S.E.2d at 541-42 (citations omitted).

 The Court focused on several aspects of the traffic law that supported a strict-

liability interpretation. First, the Court noted that the General Assembly did not

 -7-
 STATE V. WATERFIELD

 Opinion of the Court

include an express intent element, such as the words “knowingly” or “willfully” often

found in criminal statutes. Id. at 15, 220 S.E.2d at 542. Second, the Court observed

that the law was a “safety statute enacted by the Legislature for the public’s common

safety and welfare.” Id. The Court also explained that the offense fell into a category

for which the punishment is typically “a small fine.” Id. Finally, the Court noted

that proving “intent or guilty knowledge would make it impossible to enforce such

laws in view of the tremendous number of petty offenses growing out of the host of

motor vehicles upon our roads.” Id. at 14, 220 S.E.2d at 542.

 Cases from this Court have applied the Watson reasoning to many different

“public welfare” offenses, including offenses related to conservation of wildlife. See,

e.g., State v. Ballance, 218 N.C. App. 202, 217, 720 S.E.2d 856, 867 (2012). Applying

that precedent here, if the offenses with which Defendant was charged were

contained entirely within our General Statutes, we could readily hold that these are

strict liability crimes.

 The State charged Defendant with violating a marine fisheries proclamation

prohibiting “unattended gill nets with a stretched mesh length of 3 inches through 3

¾ inches” and a marine fisheries regulation making it “unlawful to leave pots in any

coastal fishing waters for more than five consecutive days, when such pots are not

being employed in fishing operations, except upon a timely and sufficient showing of

hardship.” See 15A NCAC 3I.0105(b); Proclamation M-23-2016.

 -8-
 STATE V. WATERFIELD

 Opinion of the Court

 These offenses are public welfare laws designed to protect our marine fisheries;

they carry minimum punishments, in most cases resulting only in a fine; they are the

type of routine, minor offense that could prove impossible to enforce if the State had

to gather evidence of intent; and, most importantly, the General Assembly easily

could have included an intent element for these offenses but did not do so. All of these

factors weigh strongly in favor of strict liability.

 But this case is not so simple. Here, our General Assembly did not enact a self-

contained criminal law—it enacted legislation authorizing the Marine Fisheries

Commission to regulate coastal fishing and then provided that violations of

Commission regulations could be punished as a low-level misdemeanor. N.C. Gen.

Stat. §§ 113-182; 113-135 (2016). The legislature also permitted the Commission to

delegate to the Fisheries Director the authority to issue proclamations that are, in

effect, Commission regulations. N.C. Gen. Stat. § 113-221.1. As a result of this

statutory delegation, the General Assembly could not know what particular conduct

would be criminalized by this statute; that depends on what the Marine Fisheries

Commission and its director choose to regulate.

 Defendant contends that this is the fatal flaw in the State’s case. He asserts

that there “is nothing in the context of the enabling statutes which suggests it was

the ‘manifest purpose and design’ of the General Assembly” to impose strict liability.

After all, the General Assembly did not even know what rules might one day be

 -9-
 STATE V. WATERFIELD

 Opinion of the Court

created under this delegation of authority.

 But, to be fair, the so-called enabling statute—the one delegating this

regulatory authority to the Commission—is not the key place to look. The operative

statute is N.C. Gen. Stat. § 113-135, which criminalizes the conduct at issue: “Any

person who violates any provision of this Subchapter or any rule adopted by the

Marine Fisheries Commission or the Wildlife Resources Commission, as appropriate,

pursuant to the authority of this Subchapter, is guilty of a misdemeanor . . . .” N.C.

Gen. Stat. § 113-135(a).

 The General Assembly could have included an intent element in this criminal

provision. For example, the legislature could have imposed criminal liability on any

person who willfully violates the Commission’s rules. Or the legislature could have

established a default mens rea, for example by stating that if a rule does not provide

a different level of intent, the defendant must be shown to have acted willfully to

establish a violation of the rule.

 These examples are not abstract ideas—as the parties point out in their

briefing, the General Assembly has contemplated this sort of legislation before.

Indeed, one proposed bill was entitled “An act to make changes to future criminal

laws related to regulatory offenses . . . that do not specify criminal culpability” and

would have created a default mens rea of recklessness for regulatory crimes like the

ones at issue in this case. See H.B. 1010 § 2, 2019 Session (filed 25 April 2019). That

 - 10 -
 STATE V. WATERFIELD

 Opinion of the Court

the legislature has so many means to include an intent element in these criminal

offenses, but still chose not to do so, weighs in favor of concluding these are strict

liability offenses.

 Moreover, other accompanying statutes support an interpretation that does

not include an intent element. For example, the statute authorizing the Fisheries

Director to issue proclamations states that “persons who may be affected by

proclamations issued by the Fisheries Director are under a duty to keep themselves

informed of current proclamations” and it is “no defense in any criminal prosecution

for the defendant to show that the defendant in fact received no notice of a particular

proclamation.” N.C. Gen. Stat. § 113-221.1(c). This statutory language demonstrates

that the General Assembly contemplated the proof that would be required in criminal

prosecutions of these regulations. Although the legislature chose to address certain

issues, such as the obligation to know the law, it chose not to enact an intent element.

 Moreover, there is nothing particularly unusual about the General Assembly’s

decision not to include an intent element for these offenses. These regulatory offenses

have no common law analogue; they are designed to cultivate and conserve our State’s

marine resources. These types of “public welfare” offenses often do not include an

intent element. This is because a violation of these offenses “impairs the efficiency of

controls deemed essential to the social order as presently constituted.” Morissette v.

United States, 342 U.S. 246, 256 (1952). With the rise of the administrative state and

 - 11 -
 STATE V. WATERFIELD

 Opinion of the Court

corresponding regulatory regimes, courts across our nation began construing these

regulatory crimes “which make no mention of intent as dispensing with it and holding

that the guilty act alone makes out the crime.” Id.

 Equally important, violations of the Marine Fisheries Commission regulations

and proclamations are minor criminal offenses—low-level misdemeanors that will

typically result in a fine and will lead to an active sentence only in exceedingly rare

cases for defendants with many prior convictions. N.C. Gen. Stat. § 113-135.

 Finally, these offenses fall within the category of regulatory crimes for which

an intent element could “make it impossible to enforce such laws in view of the

tremendous number of petty offenses.” See Watson, 289 N.C. at 14, 220 S.E.2d at

542. Requiring the State to launch an investigation into every person who unlawfully

leaves a crab pot or gill net unattended and to gather sufficient evidence to prove

beyond a reasonable doubt that the violation was willful could render enforcement of

these minor offenses impractical for the State. This, too, is a key factor in why our

Supreme Court and other courts have interpreted the lack of an express intent

element in these regulatory crimes as evidence of an intent to impose strict liability.

Id.; see also Morissette, 342 U.S. at 256.

 In sum, we hold that the criminal offenses charged in this case under N.C. Gen.

Stat. § 113-135 are strict liability regulatory offenses that do not require the State to

prove intent. But we note that our holding is not an endorsement of these strict

 - 12 -
 STATE V. WATERFIELD

 Opinion of the Court

liability crimes. Defendant’s appellate brief lays out in compelling detail why our

State’s criminal laws historically have required an intent element, and why the ever-

expanding morass of regulatory crimes is undermining the fundamental notion that

mens rea is a necessary component of our State’s criminal jurisprudence. But we

“lack the authority to change the law on the ground that it might make good policy

sense to do so.” Fagundes v. Ammons Dev. Grp., Inc., 251 N.C. App. 735, 739, 796

S.E.2d 529, 533 (2017).

 B. Failure to instruct on willfulness

 Defendant next argues that, even if the charged offenses are strict liability

crimes, the State was required to prove willfulness in this case because the

indictment alleged that Defendant acted willfully. Again, Defendant concedes that

he did not raise this argument in the trial court. We therefore review for plain error.

 There is logical appeal to Defendant’s argument—after all, if the State charges

a defendant with willfully violating a regulation, should the State not be required to

prove that charge? But we are again constrained by controlling precedent. What

happened in this case has happened before. In State v. Clowers, the State charged

the defendant with willfully driving while impaired because “the charging officer did

not cross out the word ‘willfully’ on the uniform citation” although, as in this case,

“willfulness is not an element of the crime.” 217 N.C. App. 520, 529, 720 S.E.2d 430,

437 (2011). The defendant presented a defense based on the State’s failure to prove

 - 13 -
 STATE V. WATERFIELD

 Opinion of the Court

willfulness and requested a jury instruction on willfulness. The trial court denied

that request because willfulness was not an essential element of the charged offense.

 This Court found no error in Clowers, holding that “the inclusion of ‘willfully’

was beyond the essential elements of the offense” and thus the trial court properly

disregarded it as “surplusage.” Id. at 529-30, 720 S.E.2d at 437. The Court further

explained that the trial court could not have instructed the jury on willfulness

because the trial court’s duty is to instruct the jury on the law and “that instruction

would not have been supported by law.” Id.

 The facts in Clowers are indistinguishable from those in this case. We are

therefore constrained to reject this argument. In re Civil Penalty, 324 N.C. 373, 384,

379 S.E.2d 30, 36 (1989). Accordingly, we find no error in the trial court’s instructions

to the jury.

 III. Conclusion

 We find no error in the trial court’s judgments.

 NO ERROR.

 Judges DIETZ and YOUNG concur.

 - 14 -