IN THE MATTER OF: THE APPEAL FROM THE CIVIL PENALTY ASSESSED FOR VIOLATIONS OF THE SEDIMENTATION POLLUTION CONTROL ACT ADMINISTERED BY THE DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT BY DENNIS W. HARRIS AND WIFE, NATALIE G. HARRIS AND ROY J. HALL

No. 543A88

(Filed 4 May 1989)

1. **Administrative Law § 3; Constitutional Law § 10.3— administrative agency—power to assess civil penalties—constitutionality**

Art. IV, § 3 of the N. C. Constitution does not prohibit the legislature from conferring the power on an administrative agency to assess civil penalties when necessary to accomplish the agency's purposes. The civil penal-

ty power is reasonably necessary to the purpose for which the Department of Natural Resources and Community Development was established.

**2. Administrative Law § 3; Constitutional Law § 10.3— administrative agency — discretion in determining civil penalties — constitutionality**

　　Art. IV, § 3 of the N. C. Constitution does not prohibit the legislature from conferring on administrative agencies the power to exercise discretion in determining civil penalties within an authorized range provided that adequate guiding standards accompany that discretion. Plenary guiding standards exist to check the exercise of NRCD discretion in its assessment of civil penalties in varying amounts for violations of the Sedimentation Pollution Control Act, commensurate with the seriousness of the violations of the Act.

**3. Appeal and Error § 2— Court of Appeals—one panel bound by decision of another panel**

　　A panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless that decision has been overturned by a higher court.

APPEAL pursuant to N.C.G.S. § 7A-30(a) and (b) by the North Carolina Department of Natural Resources and Community Development from the decision of a divided panel of the Court of Appeals, reported at 92 N.C. App. 1, 373 S.E. 2d 572 (1988), affirming the judgment vacating a civil penalty entered by *Smith, J.*, at the 10 February 1987 Session of Superior Court, WAKE County. Heard in the Supreme Court 13 February 1989.

*Lacy H. Thornburg, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General; Daniel F. McLawhorn, Special Deputy Attorney General; and Daniel C. Oakley, Special Deputy Attorney General, for respondent-appellant Department of Natural Resources and Community Development.*

*Beach & Correll, P.A., by J. Michael Correll, and W. P. Burkhimer, for petitioner-appellees Dennis W. Harris, Natalie G. Harris, and Roy J. Hall.*

*Carolina Legal Assistance, by Christine O'Connor Heinberg, and The North Carolina Council of Trout Unlimited and The North Carolina Wildlife Federation, by Thomas W. Earnhardt, Special Counsel, amici curiae.*

MEYER, Justice.

This case arises from an assessment of a civil penalty against appellees Dennis W. Harris, his wife, Natalie G. Harris, and Roy

J. Hall for violations of the Sedimentation Pollution Control Act of 1973, N.C.G.S. §§ 113A-50 to -66 ("the Act") by the North Carolina Department of Natural Resources and Community Development ("NRCD").

The administrative record tends to show that appellees own and have subdivided two adjacent tracts of land totalling approximately eighteen acres near Lenoir in Caldwell County. While enlarging one of the subdivisions on the property, between October and December 1983, appellees disturbed approximately two and one-half acres of land by grading, cutting and filling, in order to construct a street to provide access to residential lots. Appellees had been assessed civil penalties by NRCD for prior violations of the Act during earlier phases of the subdivision development, but these penalties had been settled.

The site was inspected by NRCD personnel on 20 October 1983. The inspection revealed that measures to control erosion and sedimentation resulting from the activities associated with the subdivision expansion had not been placed on the site. On 24 October 1983, NRCD sent appellees a Notice of Violation, which (1) stated that the property was in violation of the Act, (2) specified the violations and steps necessary to correct them, (3) set a deadline for compliance, and (4) warned that a civil penalty could be imposed if the violations were not corrected.

The violations were not corrected. On 10 November 1983, a Continuing Notice of Violation was mailed to appellees. Site inspections by NRCD personnel and meetings with appellees revealed that by 20 December 1983, adequate erosion control measures had still not been placed on the site and off-site sedimentation was still occurring. On 26 January 1984, pursuant to N.C.G.S. § 113A-64(a), NRCD assessed a civil penalty against appellees of $75.00 per day for fifty-six days beginning 25 October 1983 through 20 December 1983, totalling $4,200.

Appellees requested and received a hearing before an NRCD Hearing Officer. Consistent with the Hearing Officer's recommended decision, the Secretary of NRCD affirmed the penalty in October 1985, and demand for payment was made. Appellees petitioned for judicial review in Superior Court. In a judgment filed 11 February 1987, the trial court vacated the civil penalty. The trial court concluded that although the assessment was "not ef-

fected [sic] by error of law," the authority conferred pursuant to N.C.G.S. § 113A-64 allowed the Secretary of NRCD to assess civil penalties in his "absolute discretion," and thus the statute constituted a legislative grant of judicial power prohibited by article IV, section 3 of the North Carolina Constitution.

A divided panel of the Court of Appeals upheld the trial court's judgment. The majority set aside the trial court's finding that N.C.G.S. § 113A-64 authorized NRCD to assess civil penalties based solely on the Secretary's "absolute discretion," but, relying on *Lanier, Comr. of Insurance v. Vines*, 274 N.C. 486, 164 S.E. 2d 161 (1968), concluded nevertheless that article IV, section 3 of the North Carolina Constitution "does not permit an administrative agency to assess a civil penalty whose amount varies with *any* agency discretion," *In the Matter of Appeal from Civil Penalty*, 92 N.C. App. at 11, 373 S.E. 2d at 578, and that therefore N.C.G.S. § 113A-64 was an unconstitutional attempt to confer reserved judicial powers on an administrative agency. The dissent concluded that (1) the majority declined to follow a prior Court of Appeals' interpretation of *Lanier, N.C. Private Protective Services Bd. v. Gray, Inc.*, 87 N.C. App. 143, 360 S.E. 2d 135 (1987); and (2) the issue of constitutionality was controlled by the fact that N.C.G.S. § 113A-64 included adequate guiding standards to govern NRCD's exercise of adjudicative powers, thereby satisfying the constitutional requirement for such delegations of quasi-judicial powers.

On 18 November 1988, NRCD filed its notice of appeal based on the dissent in the Court of Appeals and also petitioned for discretionary review on the issue of whether article IV, section 3 of the North Carolina Constitution prohibits the legislature from conferring the power on administrative agencies to exercise discretion in determining civil penalties within an authorized range. The petition was allowed 5 December 1988. Accordingly, this appeal presents three questions for review: (1) whether article IV, section 3 of the North Carolina Constitution prohibits the legislature from conferring the power on administrative agencies to assess civil penalties, specifically, the power of NRCD to assess civil penalties under N.C.G.S. § 113A-64; (2) whether article IV, section 3 of the North Carolina Constitution prohibits the legislature from conferring on administrative agencies the power to exercise discretion in determining civil penalties within an authorized range; and (3) whether a panel of the Court of Appeals is

bound by a prior decision of another panel of the same court on the same issue.

## I.

[1] The first question we address is whether article IV, section 3 of the North Carolina Constitution prohibits the legislature from conferring the power on administrative agencies to assess civil penalties. In this case, the Court of Appeals majority concluded that the Constitution does not permit NRCD to assess any civil penalties pursuant to N.C.G.S. § 113A-64.

Article IV, section 3 of the North Carolina Constitution provides in part:

> The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created.

N.C. Const. art. IV, § 3 (1984).

The statute at issue here provides in pertinent part as follows:

(a) Civil Penalties. — (1) Any person who violates any of the provisions of this Article or any ordinance, rule, regulation, or order adopted or issued pursuant to this Article by the Commission or by a local government, or who initiates or continues a land-disturbing activity for which an erosion control plan is required except in accordance with the terms, conditions, and provisions of an approved plan, shall be subject to a civil penalty of not more than one hundred dollars ($100.00). No penalty shall be assessed until the person alleged to be in violation has been notified of the violation. Each day of a continuing violation shall constitute a separate violation under G.S. 113A-64(a)(1).

(2) The Secretary, for violations under the Commission's jurisdiction, . . . shall determine the amount of the civil penalty to be assessed under G.S. 113A-64(a) and shall make written demand for payment upon the person responsible for the violation, and shall set forth in detail the violation for which the penalty has been invoked. If payment is not received or equitable settlement reached

within 30 days after demand for payment is made, the Secretary shall refer the matter to the Attorney General for the institution of a civil action in the name of the State in the superior court of the county in which the violation is alleged to have occurred to recover the amount of the penalty . . . . Any sums recovered shall be used to carry out the purposes and requirements of this Article.

N.C.G.S. § 113A-64(a) (1983). The statute specifically provides that the Secretary has the power to assess a varying civil penalty, up to $100.00 per day. The language of the statute contemplates that the amount of the fine will be commensurate with the seriousness of a person's violation of the Act. The Court of Appeals majority concluded that under this Court's decision in *Lanier, Comr. of Insurance v. Vines*, 274 N.C. 486, 164 S.E. 2d 161, there was no reasonable necessity in this case for conferring upon the Secretary of NRCD the judicial power to impose a monetary penalty. We are convinced that, by relying on obiter dicta in the opinion, the Court of Appeals majority read *Lanier* too broadly and erred in affirming the trial court. We therefore reverse.

In *Lanier*, the State, on the relation of the Commissioner of Insurance, brought a civil action to recover a civil penalty imposed by the Commissioner upon the defendant for violation of the insurance laws of North Carolina. The Court turned to the North Carolina Constitution, article IV, section 3, to determine whether the power to assess a varying civil penalty could be properly conferred upon a member of the executive department. *Lanier*, 274 N.C. at 494, 164 S.E. 2d at 166. The Court explained:

The legislative authority is the authority to make or enact laws; that is, the authority to establish rules and regulations governing the conduct of the people, their rights, duties and procedures, and to prescribe the consequences of certain activities. Usually, it operates prospectively. The power to conduct a hearing, to determine what the conduct of an individual has been and, in the light of that determination, to impose upon him a penalty, within limits previously fixed by law, so as to fit the penalty to the past conduct so determined and other relevant circumstances, is judicial in nature, not legislative.

*Id.* at 495, 164 S.E. 2d at 166. The Court was thus "concerned with the extent to which the Legislature [had] undertaken to confer upon an administrative officer a [judicial] power which the Legislature, itself, never had." *Id.* at 496, 164 S.E. 2d at 167. The Court then stated:

> Under Art. IV, §§ 1 and 3, of the North Carolina Constitution, as amended by the vote of the people at the general election in November 1962, *the Legislature may do this, if, but only if, conferring this segment of the judicial power of the State upon the Commissioner of Insurance is "reasonably necessary as an incident to the accomplishment of the purposes for which" the Department of Insurance was created.*

*Id.* at 496-97, 164 S.E. 2d at 167 (emphasis added) (quoting N.C. Const. art. IV, § 3). In *Lanier*, the Court found "no reasonable necessity for conferring upon the Commissioner the judicial power to impose upon an agent a monetary penalty, varying, in the Commissioner's discretion, from a nominal sum to $25,000 for each violation." *Id.* at 497, 164 S.E. 2d at 167.

The Court went on to note, however, that:

> Whether a judicial power is "reasonably necessary as an incident to the accomplishment of a purpose for which" an administrative office or agency was created *must be determined in each instance in the light of the purpose for which the agency was established and in the light of the nature and extent of the judicial power undertaken to be conferred.*

*Id.* (emphasis added).

Article IV, section 3 of the Constitution contemplates that discretionary judicial authority may be granted to an agency when reasonably necessary to accomplish the agency's purposes. When shorn of obiter dicta, the holding in *Lanier* is not to the contrary. Further, the opinion is fact-specific; that is, the judicial power to assess a monetary penalty *in that case* was found not to be reasonably necessary to further the purposes of *that* agency. The Court specifically noted that challenges to an agency's judicial power should be addressed on a case-by-case basis. *Lanier* cannot therefore be read to mean that in no instance will there exist a reasonable necessity for conferring upon an agency the judicial power to impose a monetary penalty. Rather, in *Lanier* this

Court addressed an isolated question raised by an uncomplicated statute; it did not decide that the North Carolina Constitution absolutely forbids conferring discretionary civil penalty power on administrative agencies. *See N.C. Private Protective Services Bd. v. Gray, Inc.*, 87 N.C. App. 143, 360 S.E. 2d 135 (1987) (*Lanier* does not hold that all administrative civil penalties are *per se* in violation of article IV, section 3); *cf. Young's Sheet Metal and Roofing, Inc. v. Wilkins, Comr. of Motor Vehicles*, 77 N.C. App. 180, 334 S.E. 2d 419 (1985) (Division of Motor Vehicles could not imply a civil penalty power not created by statute). As the dissenting judge in the Court of Appeals succinctly noted, *Lanier* does not hold that agency exercise of the judicial power to impose a monetary penalty offends our Constitution in all circumstances.

Having concluded that *Lanier* does not foreclose the legislature from constitutionally conferring on an administrative agency the judicial power to assess a monetary penalty, we now consider whether this power is reasonably necessary "in the light of the purpose for which [NRCD] was established and in the light of the nature and extent of the judicial power undertaken to be conferred." *Lanier*, 274 N.C. at 497, 164 S.E. 2d at 168.

The purposes for which NRCD was created are generally stated in N.C.G.S. §§ 113-3 and -8. Section 113-3 provides in part that "[i]t shall be the duty of [NRCD] . . . to aid . . . [i]n the promotion of the conservation and development of the natural resources of the State [and] . . . a more profitable use of lands and forests." N.C.G.S. § 113-3(a)(1), (2) (1987). Section 113-8 provides that NRCD "shall have the duty of enforcing all laws relating to the conservation of marine and estuarine resources." N.C.G.S. § 113-8 para. 4 (1987). One of these laws is the Sedimentation Pollution Control Act of 1973. Its purpose is "to provide for the creation, administration, and enforcement of a program . . . which will permit development of this State to continue with the least detrimental effects from pollution by sedimentation." N.C.G.S. § 113A-51 (1983).

There are several basic objectives in sedimentation control, including (1) identification of critical areas, (2) limiting the size of exposed areas, and (3) limiting the time of exposure. N.C.G.S. § 113A-57 (1983); N.C. Admin. Code tit. 15, r. 4B.0006 (Sept. 1987). Perhaps the most critical concern is that time is of the essence,

but the penalties section of the Act provides no form of "stop work" power in order to halt a violation in progress. N.C.G.S. §§ 113A-64 to -66 (1983). Although NRCD has authority to seek injunctive relief in the courts, N.C.G.S. § 113A-64, by the time an action is brought and an injunction issued, irreparable damage may have already occurred. The power to levy a civil penalty is therefore a useful tool, since even the threat of a fine is a deterrent. We conclude that the civil penalty power is reasonably necessary to the purposes for which NRCD was established. *Lanier, Comr. of Insurance v. Vines*, 274 N.C. 486, 164 S.E. 2d 161; N.C. Const. art. IV, § 3 (1984).

## II.

[2] The second prong of the *Lanier* inquiry, that is, whether the power to assess a monetary penalty is reasonably necessary "in the light of the nature and extent of the judicial power undertaken to be conferred," *Lanier*, 274 N.C. at 497, 164 S.E. 2d at 168, is subsumed in the issue of whether article IV, section 3 prohibits the legislature from conferring on administrative agencies, here NRCD, the power to exercise discretion in determining civil penalties within an authorized range. Based on its reading of *Lanier*, and the fact that there the Commissioner of Insurance had discretion to assess a civil penalty varying from a nominal sum to $25,000 per violation, the majority of the Court of Appeals concluded that article IV, section 3 "does not permit an administrative agency to assess a civil penalty whose amount varies with *any* agency discretion." *In the Matter of Appeal from Civil Penalty*, 92 N.C. App. at 11, 373 S.E. 2d at 578.

This Court decided *Lanier* in 1968. As the dissent in the Court of Appeals correctly noted, "[m]echanical application of the *Lanier* rule ignores the progress made in the way the role of administrative agencies is regarded." *Id.* at 20, 373 S.E. 2d at 583 (Becton, J., dissenting). In *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E. 2d 300 (1980), we acknowledged that:

> [W]e must expect the Legislature to legislate only so far as is reasonable and practical to do and we must leave to [the agency] the authority to accomplish the legislative purpose, *guided of course by proper standards. The modern tendency is to be more liberal in permitting grants of discretion to ad-*

*ministrative agencies* in order to ease the administration of laws as the complexity of economic and governmental conditions increases. . . .

North Carolina cases have long been consistent with this "modern tendency."

*Id.* at 402, 269 S.E. 2d at 563 (emphasis added) (citations omitted). And in *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978), we stated that transfers of "adjudicative and rule-making powers to administrative bodies [are not constitutionally precluded] provided such transfers are accompanied by adequate *guiding standards* to govern the exercise of the delegated powers." *Id.* at 697, 249 S.E. 2d at 418 (emphasis added) (citations omitted). Since *Lanier* was decided, we have recognized that because of the increasing "complexity of economic and governmental conditions," *Rate Bureau*, 300 N.C. at 402, 269 S.E. 2d at 563, some discretion may be granted to agencies to ensure that they accomplish the purposes for which they were created, provided that such discretion is accompanied by adequate guiding standards.

In *Lanier*, the Commissioner of Insurance had the power to impose a monetary penalty which varied, in his discretion, from a nominal sum to $25,000 for each violation. Such is not the case here, since the civil penalty power conferred on NRCD is legislatively confined to a maximum of $100.00 for each violation of the Act. N.C.G.S. § 113A-64(a) (1983). Further, explicit "mandatory standards" are imposed by N.C.G.S. § 113A-57 which provide specific guidance to NRCD in determining whether violations of the Act have occurred.

No land-disturbing activity subject to this Article shall be undertaken except in accordance with the following mandatory requirements:

(3) Whenever land-disturbing activity is undertaken on a tract comprising more than one acre, if more than one contiguous acre is uncovered, the person conducting the land-disturbing activity shall install such sedimentation and erosion control devices and practices as are sufficient to retain the sediment generated by the land-disturbing activity within the

boundaries of the tract during construction upon and development of said tract, and shall plant or otherwise provide a permanent ground cover sufficient to restrain erosion after completion of construction or development within a time period to be specified by rule of the Commission.

(4) No person shall initiate any land-disturbing activity if more than one contiguous acre is to be uncovered unless, 30 or more days prior to initiating the activity, an erosion and sedimentation control plan for such activity is filed with the agency having jurisdiction.

N.C.G.S. § 113A-57 (Cum. Supp. 1988). These "mandatory standards" are bolstered by five factors set forth in N.C.G.S. § 113A-64 which must be considered by NRCD in assessing a civil penalty:

In determining the amount of the penalty, the Secretary shall consider the degree and extent of harm caused by the violation, the cost of rectifying the damage, the amount of money the violator saved by his noncompliance, whether the violation was committed willfully and the prior record of the violator in complying or failing to comply with this Article.

N.C.G.S. § 113A-64(a)(3) (Cum. Supp. 1988). Finally, numerous grounds for judicially reviewing the administrative assessment of civil penalties are available. N.C.G.S. § 150B-51 (1987). We conclude that plenary guiding standards exist here to check the exercise of NRCD discretion in its assessment of civil penalties in varying amounts, commensurate with the seriousness of the violations of the Act.

### III.

[3] Finally, we turn to the question of whether a panel of the Court of Appeals is bound by a prior decision of another panel of the same court which addressed the same question but in a different case. In the case sub judice, the majority characterized *N.C. Private Protective Services Bd. v. Gray, Inc.*, 87 N.C. App. 143, 360 S.E. 2d 135, as an attempt to distinguish *Lanier* which contradicted the latter's "express language, rationale and result" and "intrude[d] on the Legislature's delegation of its own legislative functions." *In the Matter of Appeal from Civil Penalty*, 92 N.C. App. at 13, 15, 373 S.E. 2d at 579, 580. Several pages of the

In the Matter of Appeal from Civil Penalty

opinion were devoted to a detailed rejection of the *Gray* panel's interpretation of *Lanier*.

This Court has held that one panel of the Court of Appeals may not overrule the decision of another panel on the same question in the same case. *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 299 S.E. 2d 629 (1983). The situation is different here since this case and *N.C. Private Protective Services Board v. Gray, Inc.*, 87 N.C. App. 143, 360 S.E. 2d 135, do not arise from the same facts. In *Virginia Carolina Builders*, however, we indicated that the Court will examine the effect of the subsequent decision, rather than whether the term "overrule" was actually employed. We conclude that the effect of the majority's decision here was to overrule *Gray*. This it may not do. Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court. *See Monroe County, Florida v. U.S. Dept. of Labor*, 690 F. 2d 1359 (11th Cir. 1982); *Caldwell v. Ogden Sea Transport, Inc.*, 618 F. 2d 1037 (4th Cir. 1980).

We hold (1) that article IV, section 3 of the North Carolina Constitution does not prohibit the legislature from conferring the power on administrative agencies to assess civil penalties; (2) that article IV, section 3 does not prohibit the legislature from conferring on administrative agencies the power to exercise discretion in determining civil penalties within an authorized range, provided that adequate guiding standards accompany that discretion; and (3) that a panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court.

The decision of the Court of Appeals is reversed and the case remanded to that court for further remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

Reversed and remanded.