IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-366

Filed: 2 October 2018

Pitt County, Nos. 14 JT 103-04

IN THE MATTER OF: I.P. and Q.P., Jr.

Appeal by Respondent-Father from orders entered 17 January 2018 by Judge P. Gwynett Hilburn in Pitt County District Court. Heard in the Court of Appeals 13 September 2018.

> *The Graham, Nuckolls, Conner, Law Firm, PLLC, by Timothy E. Heinle, for petitioner-appellee Pitt County Department of Social Services.*
>
> *Assistant Appellate Defender Joyce L. Terres, for respondent-appellant father.*
>
> *Respondent-appellant father, pro se.*
>
> *Administrative Office of the Courts, by Guardian Ad Litem Appellate Counsel Matthew D. Wunsche, for guardian ad litem.*

HUNTER, JR., Robert N., Judge.

Respondent-Father appeals from orders terminating his parental rights to his minor children, I.P. ("Ian") and Q.P., Jr. ("Quentin").[1] Respondent-Father's counsel filed a no-merit brief, pursuant to North Carolina Rule of Appellate Procedure 3.1(d). Respondent-Father failed to properly bring forth any *pro se* argument. We dismiss.

---

[1] We use pseudonyms throughout the opinion for ease of reading and to protect the juveniles' identities. N.C. R. App. P. 3.1(b) (2017).

## I. Factual and Procedural Background

On 25 June 2014, the Pitt County Department of Social Services ("DSS") obtained non-secure custody of Ian and Quentin and filed petitions alleging them to be neglected and dependent juveniles. The petition alleged the following narrative. On 11 February 2014, DSS received a child protective services ("CPS") report alleging Ian, then four months old, tested positive for cocaine and marijuana. The juvenile's mother ("mother) tested positive for cocaine and admitted to using marijuana.[2] Mother refused drug treatment. On 16 June 2014, mother had no food in her home. Although mother received $750 in food stamps per month, she sold her food stamps. Mother used "marijuana and cocaine with [Ian] in her arms and strapped to her chest[.]" Quentin ran around mother's home, holding a butcher knife. Mother "pulled a knife" on another and refused to submit to a drug screen. Mother offered Ian and Quentin's grandmother as a placement option, but CPS reported the grandmother also "ha[d] her own drug abuse issues[.]" DSS further alleged the following: (1) Ian and Quentin did not receive proper care, supervision or discipline; (2) they lived in an environment injurious to their welfare; and (3) mother was unable to provide for their care and supervision. At the time DSS filed the petitions, Respondent-Father's whereabouts were unknown.[3]

---

[2] Mother is not a party to this appeal. In the interest of brevity, this opinion omits most of the background relevant to mother.

[3] At the termination hearing, a DSS social worker testified Respondent-Father "surface[d] . . . a month and a half later."

On 7 August 2014, the trial court held an adjudication hearing, which Respondent-Father attended. On 29 August 2014, the court entered an adjudication order. The court concluded Ian and Quentin were neglected and dependent juveniles.[4] Following a disposition hearing on 4 September 2014, the court entered an order on 8 October 2014. The court kept custody of Ian and Quentin with DSS and granted Respondent-Father visitation with the juveniles. The trial court further ordered Respondent-Father to do the following: (1) comply with the terms of his probation and not acquire new criminal charges; (2) complete parenting classes; (3) obtain and maintain stable employment; and (4) obtain and maintain stable housing.

On 29 January 2015, the trial court held a permanency planning review hearing. In an order entered 5 March 2015, the court found:

> 19. The Department has only had contact with the Respondent Father once since the initiation of this case. The Respondent Father is currently incarcerated. His release date is unknown.
>
> 20. Reunification efforts would not result in placement in the home within a reasonable period of time [and] would be futile and inconsistent with safety and the need for a safe permanent home for the following reasons: the Respondent Father has not been involved in the Juvenile[s'] case and has failed to show a lack [of] dedication to the Juveniles. He is currently incarcerated and his release date is unknown.

---

[4] The trial court's adjudication order and subsequent orders prior to the filing of petitions to terminate parental rights also involved Ian and Quentin's siblings, but they are not parties to this appeal.

Consequently, the trial court ceased reunification efforts with Respondent-Father. The court allowed Respondent-Father's counsel to withdraw from representation, because Respondent-Father failed to stay in contact with counsel. The court set the permanent plan for Ian and Quentin as reunification with mother, with a concurrent plan of adoption.

The court held another review hearing on 28 January 2016.[5] In an order entered 12 February 2016, the court found mother relapsed and used marijuana and cocaine. The court ceased reunification efforts with mother. The court changed the primary permanent plan to adoption, and the secondary plan to guardianship. The court held another review hearing on 10 November 2016. At the hearing, the trial court found paternity testing ruled Respondent-Father out as Ian's biological father.

On 5 December 2016, DSS filed a petition to terminate mother's parental rights to Ian. The same day, DSS filed a petition to terminate mother's and Respondent-Father's parental rights to Quentin.[6] DSS alleged the following grounds for termination existed as to Quentin: (1) neglect; (2) failure to correct the conditions which led to Quentin's removal from his care; (3) failure to pay for Quentin's cost of care while Quentin was in DSS custody; (4) dependency; and (5) willful abandonment. *See* N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6)-(7) (2017).

---

[5] The court also held review hearings on 30 April 2015 and 16 July 2015.

[6] Because paternity tests established Respondent-Father was not the biological father of Ian, DSS did not seek to terminate Respondent-Father's paternal rights to Ian.

The trial court held a hearing on the petitions on 28 September 2017 and 7 December 2017.[7] DSS called Kelli Clay, a social worker. Due to Respondent-Father's probation conditions, DSS set up a "strict visitation plan" for him. Respondent-Father did not comply with the visitation plan. Out of twenty-five opportunities for visitation, Respondent-Father attended thirteen. Respondent-Father last visited with the juveniles on 11 July 2016. Respondent-Father owed $1,270.18 in arrears for child support for Quentin. Respondent-Father did give the juveniles a few gifts, "but nothing substantial[.]"

Although the court ordered Respondent-Father to not obtain any new criminal charges, authorities in North Carolina charged him for crimes "that involved communicating threats[.]" Additionally, Respondent-Father did not complete parenting classes. Although Respondent-Father told DSS he obtained employment and stable housing, he failed to provide any verification.

DSS moved to amend the petition to terminate parental rights to Ian to include allegations against Respondent-Father. DSS contended it learned Respondent-Father had been found to be the father of Ian in a prior child-support hearing and that court ordered Respondent-Father to pay child support for Ian. Thus, Respondent-Father is Ian's legal father. With the consent of Respondent-Father's counsel, who joined in the motion, the court allowed the requested amendments so

[7] The hearing was for the petitions to terminate mother's parental rights to Ian and Quentin and Respondent-Father's parental rights to Quentin.

the allegations against Respondent-Father as to Ian were identical to those in the petition to terminate Respondent-Father's parental rights to Quentin.

Respondent-Father testified on his own behalf and largely narrated his testimony. From 2013 until the hearing, Respondent-Father was intermittently incarcerated. In February 2016, Respondent-Father returned to North Carolina. He began working at Cracker Barrel and moved into an apartment in Greenville. Respondent-Father "look[ed] for parenting classes to take, but . . . was unfortunate enough to not find any classes." Respondent-Father alleged DSS fought against him getting custody of Ian and Quentin.

On 17 January 2018, the trial court entered orders terminating Respondent-Father's parental rights to Ian and Quentin. The court found the following grounds for termination existed: (1) neglect; (2) failure to correct the conditions which led to the juveniles' removal from his care; (3) failure to pay for the juveniles' cost of care while they were in DSS custody; (4) dependency; and (5) willful abandonment. *See* N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6)-(7). In an order entered 17 January 2018, the court found termination of Respondent-Father's parental rights was in the juveniles' best interests. On 30 January 2018, Respondent-Father filed timely notice of appeal.

## II. Analysis

Appellate counsel for Respondent-Father filed a no-merit brief on Respondent-Father's behalf, in which counsel states she made a conscientious and thorough

review of the record on appeal and concluded there is no issue of merit on which to base an argument for relief. Pursuant to North Carolina Rule of Appellate Procedure 3.1(d), counsel requests this Court conduct an independent examination of the case. N.C. R. App. P. 3.1(d) (2017). In accordance with Rule 3.1(d), counsel wrote a letter to Respondent-Father on 2 May 2018, advising him of counsel's inability to find error, her request for this Court to conduct an independent review of the record, and his right to file his own arguments directly with this Court. Counsel also avers she provided Respondent-Father with copies of all relevant documents so that he may file his own arguments with this Court.

In addition to seeking review pursuant to Rule 3.1(d), counsel directs this Court's attention to potential issues with the trial court's conclusions of law on the grounds of failure to correct the conditions which led to the juveniles' removal from his care, failure to pay for the juveniles' cost of care while they were placed in DSS custody, dependency, and willful abandonment. Counsel concedes, however, the trial court did not err in terminating Respondent-Father's parental rights on the ground of neglect. *See In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) (citation omitted) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court"). Counsel also concedes the trial court did not abuse its discretion in

concluding termination of Respondent-Father's parental rights was in the juveniles' best interests.

On 9 May 2018, counsel filed a motion, requesting this Court extend Respondent-Father's time to file a *pro se* brief. In an order entered 11 May 2018, we granted this motion, ordering Respondent-Father to file his brief by 8 June 2018.

On 18 June 2018, Respondent-Father filed his *pro se* brief, arguing:

> the trial court[']s fact finding was flawed because it was influenced by specious testimony & acts. I am not able to prove my case in chief at this exact moment as I do not have access to vital paperwork/documents nor the resources to support my argument. Currently, I am being detained at the address listed on criminal charges, with a trial date set within the next 90 days. I humbly request that this court suspend any final ruling for the next 120 days. That will give my criminal case time to have been heard & me to compile & obtain what[']s needed to support my argument.

Inasmuch as Respondent-Father's argument presents a request to hold his appeal in abeyance, we deny the request. Moreover, Respondent-Father's sole argument on appeal—the trial court's fact finding was flawed—is a bare assertion of error unsupported by citation to any record evidence or legal authority, and it is thus not properly before this Court. *In re C.D.A.W.*, 175 N.C. App. 680, 688, 625 S.E.2d 139, 144 (2006) (holding an issue on appeal was abandoned where it was "void of any discernible argument or citation as authority for such a claim"). *See also* N.C. R. App.

P. 28(b)(6) (2017) ("Issues . . . in support of which no reason or argument is stated, will be taken as abandoned.").

Although Respondent-Father filed *pro se* arguments with this Court, his arguments are not properly before this Court because they are untimely and nothing more than unsupported allegations of error, as explained *supra*. Thus, "[n]o issues have been argued or preserved for review in accordance with our Rules of Appellate Procedure." *In re L.V.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2018 WL 3232738 (N.C. Ct. App. July 3, 2018). Accordingly, we must dismiss Respondent-Father's appeal. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

### III. Conclusion

For the foregoing reasons, we dismiss Respondent-Father's appeal.

DISMISSED.

Judge ARROWOOD concurs in result only in a separate opinion.

Chief Judge McGEE dissents in a separate opinion.

No. COA18-366 – *In the Matter of:  I.P. & Q.P., Jr.*

ARROWOOD, Judge, concurring in result only.

I concur in result only for the reasons discussed in my concurrence in *In the Matter of:  L.E.M.*, __ N.C. App. __, __ S.E.2d __, (2018) (No. COA18-380), filed concurrently with this opinion.

No. COA18-366 – *In the Matter of: I.P. & Q.P., Jr.*

McGEE, Chief Judge, dissenting.

I dissent for the reasons discussed in my dissenting opinion in *In re L.E.M.*, __ N.C. App. __, __ S.E.2d __, (2018) (No. COA-380), filed concurrently with this opinion.