HUNTER, JR., Robert N., Judge.
*645 Respondent appeals from an order terminating his parental rights to his minor child, L.E.M. ("Landon").[1] Respondent's counsel filed a no-merit brief, pursuant to North Carolina Rule of Appellate Procedure 3.1(d). We dismiss.
*646 I. Factual and Procedural Background
On 4 January 2016, the Gaston County Department of Social Services ("DSS") obtained non-secure custody of Landon and his older sibling B.E.M. ("Brett") and filed a petition alleging both to be neglected and dependent juveniles.[2] DSS alleged it was involved with the family since September 2015, due to allegations of substance abuse and medical neglect of Brett. Following a recent arrest, both parents[3] were being held in the *578 Gaston County Jail. DSS further alleged the following: (1) the children did not receive proper care, supervision, or discipline from their parents; (2) the children lived in an environment injurious to their welfare; and (3) the parents were unable to provide for the children's care and supervision.
On 17 February 2016, Respondent entered into a mediation agreement with DSS, wherein he accepted Landon would be adjudicated as neglected and dependent, entered into a case plan with DSS, and agreed to work with DSS toward reunification with Landon. On 19 April 2016, the trial court entered an order adjudicating Landon as a neglected and dependent juvenile. The court continued custody of Landon with DSS. The court ordered Respondent comply with the terms of his mediated case plan, including: (1) obtain a substance abuse assessment, follow recommendations of the assessment, and submit to random drug screens; (2) obtain a mental health assessment and follow recommendations of the assessment; (3) attend the juveniles' medical appointments; (4) obtain safe and appropriate housing; (5) obtain employment; and (6) complete a parenting class and utilize skills learned during visits with Landon.
In May and September 2016, the trial court conducted review and permanency planning hearings. The court established Landon's primary permanent plan as reunification, with guardianship as the secondary plan.
On 29 November 2016, the court held another review and permanency planning hearing. In an order entered 28 March 2017, the trial court found Respondent failed to make sufficient progress on his case plan and was incarcerated in West Virginia. The court changed Landon's primary permanent plan to adoption, with a secondary plan of reunification In an order entered 11 April 2017, the court continued Landon's primary permanent plan as adoption, but changed the secondary plan to guardianship.
*647 On 12 April 2017, DSS filed a petition to terminate Respondent's parental rights to Landon. DSS alleged grounds existed for termination of Respondent's parental rights based on: (1) neglect; (2) failure to correct the conditions that led to Landon's removal from his care; and (3) dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (6) (2017).
On 13 November 2017, the trial court held a termination of parental rights hearing. DSS called Respondent. Respondent entered into a case plan with DSS, following Landon's adjudication as a neglected and dependent juvenile. Pursuant to the plan, Respondent agreed to resolve substance abuse issues, attend counseling, attend parenting classes, and visit Landon. However, he failed to participate in a substance abuse assessment or complete any substance abuse treatment.
In June 2015, authorities in Harrison County arrested Respondent for a parole violation. On 1 August 2015, authorities "shipped" him to jail in West Virginia. In West Virginia, he did not complete any progress on his case plan, because "[t]hey don't provide that stuff in the West Virginia department."
While Respondent was incarcerated, Hannah Crawford, a DSS social worker regularly contacted Respondent. He wrote her one letter in December 2015. In his letter, he did not tell Crawford about the lack of resources available to him. Following his release in late May or early June 2017, the court and DSS refused to allow him to see Landon and Brett.[4]
DSS next called Hannah Crawford. From the time DSS took custody of Landon on 4 January 2016 to the date of the hearing, Crawford was the social worker assigned to Landon's case. Crawford asserted Respondent failed to make "significant progress" on his case plan, even prior to his incarceration on 1 June 2015. Respondent attended visitation with Landon but did not demonstrate "appropriate" parenting skills. Respondent failed to obtain a substance abuse assessment, engage in any substance abuse treatment, or obtain a mental health assessment. Respondent also did not complete parenting classes, obtain employment, or obtain safe housing. On 26 May 2016, a doctor performed *579 a parental capacity evaluation, concluding Respondent possessed "rather marginal parenting capability."
Following another arrest in June 2016 and Respondent's incarceration until May 2017, Crawford "attempted" to maintain contact *648 with Respondent. Respondent did not contact Crawford "regularly", inquire about Landon's placement, or send any "cards, gifts, letters ...." Respondent replied to Crawford only once, in December 2016, acknowledging the case plan Crawford sent to him and that he received her letters. In the letter, it seemed "along the line that he'd be able to complete parenting classes[.]"
Following his subsequent release in April 2017, Respondent called Crawford in May 2017.[5] Crawford asked Respondent to meet with DSS to go over the case plan. DSS and Respondent met on 5 June 2017. Following the meeting, Respondent failed to attend a mental health assessment, failed to obtain a substance abuse assessment, did not comply with two drug screens, and tested positive for drugs.
Since 31 May 2016, Respondent did not write or call Crawford to ask about Landon or have any contact with Landon. As of the day of the hearing, Respondent failed to submit proof of stable employment or appropriate housing.
On 5 January 2018, the trial court entered an order terminating Respondent's parental rights on the grounds of neglect and failure to make reasonable progress. See N.C. Gen. Stat. § 7B-1111(a)(1), (2). The court concluded termination of Respondent's parental rights was in Landon's best interests. Respondent filed timely notice of appeal.
II. Analysis
Appellate counsel for Respondent filed a no-merit brief on Respondent's behalf in which counsel states she made a conscientious and thorough review of the record on appeal and concluded there is no issue of merit on which to base an argument for relief. Pursuant to North Carolina Rule of Appellate Procedure 3.1(d), appellate counsel requests this Court conduct an independent examination of the case. N.C. R. App. P. 3.1(d) (2017). In accordance with Rule 3.1(d), counsel wrote a letter to Respondent on 26 April 2018, advising Respondent of counsel's inability to find error, of counsel's request for this Court to conduct an independent review of the record, and of Respondent's right to file his own arguments directly with this Court. Counsel also avers she provided Respondent with copies of all relevant documents so that he may file his own arguments with this Court. Respondent did not file written arguments with this Court, and a reasonable time for him to have done so *649 has passed. Thus, "[n]o issues have been argued or preserved for review in accordance with our Rules of Appellate Procedure." In re L.V. , --- N.C. App. ----, ----, 814 S.E.2d 928, 929 (N.C. Ct. App. 2018). Accordingly, we must dismiss Respondent's appeal. In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citation omitted) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
III. Conclusion
For the foregoing reasons, we dismiss Respondent's appeal.
DISMISSED.
Judge ARROWOOD concurs in result only in separate opinion.
Chief Judge McGEE dissents in a separate opinion.
ARROWOOD, Judge, concurring in result only.
We are dismissing respondent's appeal because we are bound by In re L.V. , --- N.C. App. ----, 814 S.E.2d 928 (N.C. Ct. App. 2018). I agree that In re Civil Penalty , 324 N.C. 373, 379 S.E.2d 30 (1989) requires our Court to follow In re L.V. , however, I concur in the result only because I believe In re L.V. erroneously altered the jurisprudence of cases arising under Rule 3.1 of the North Carolina Rules of Appellate Procedure. Furthermore, *580 this change significantly impacts the constitutional rights of North Carolinians, such as the respondent in this case, whose fundamental right to a parental relationship with his child should only be terminated as contemplated by law. Therefore, I write separately to address this shift in our precedent.
The concept of a no-merit brief, also referred to as an Anders brief, comes from the United States Supreme Court's decision in Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Anders held that an attorney representing a criminal defendant in a case the attorney finds without legal merit can request permission to withdraw as counsel for this reason, but the request must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." Anders , 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. "[T]he court-not counsel-then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Id.
*650 Our Court initially denied extending Anders procedures to termination of parental rights cases. See In re N.B. , 183 N.C. App. 114, 117, 644 S.E.2d 22, 24 (2007) (citation omitted). However, the In re N.B. court "urge[d] our Supreme Court or the General Assembly to reconsider this issue[,]" noting that "permitting such review furthers the stated purposes of our juvenile code." Id . at 117-19, 644 S.E.2d at 24-25. Thereafter, our Supreme Court adopted Rule 3.1(d) of the North Carolina Rules of Appellate Procedure, which states:
In an appeal taken pursuant to [N.C. Gen. Stat.] § 7B-1001, if, after a conscientious and thorough review of the record on appeal, appellate counsel concludes that the record contains no issue of merit on which to base an argument for relief and that the appeal would be frivolous, counsel may file a no-merit brief. In the brief, counsel shall identify any issues in the record on appeal that might arguably support the appeal and shall state why those issues lack merit or would not alter the ultimate result. Counsel shall provide the appellant with a copy of the no-merit brief, the transcript, the record on appeal, and any Rule 11(c) supplement or exhibits that have been filed with the appellate court. Counsel shall also advise the appellant in writing that the appellant has the option of filing a pro se brief within thirty days of the date of the filing of the no-merit brief and shall attach to the brief evidence of compliance with this subsection.
N.C.R. App. P. 3.1(d) (2018).
Rule 3.1(d) provides for the filing of "no-merit briefs" and allowing an Anders -like procedure for appeals taken pursuant to N.C. Gen. Stat. § 7B-1001, including from termination of parent rights orders. See id . A parent may file a pro se brief when counsel files a no-merit brief, but nothing in the rule appears to require a parent to file a pro se brief in order for our Court to review the appeal. See id. Indeed, our Court has consistently interpreted Rule 3.1(d) to require our Court to conduct an independent review in termination of parental rights cases in which counsel filed a no-merit brief and the respondent-parent did not file a pro se brief. See, e.g., In re A.A.S. , --- N.C. App. ----, ----, 812 S.E.2d 875, 879 (2018) ; In re M.S. , 247 N.C. App. 89, 94, 785 S.E.2d 590, 594 (2016) ; In re D.M.G. , 235 N.C. App. 217, 763 S.E.2d 339, 2014 WL 3511008 at *1, slip op. at *3 (2014) (unpublished); In re D.M.H. , 234 N.C. App. 477, 762 S.E.2d 531, 2014 WL 2795916 at *1, slip op. at *2 (2014) (unpublished);
*651 In re O.M.B. , 204 N.C. App. 369, 696 S.E.2d 201, 2010 WL 2163793 at *1, slip op. at *3 (2010) (unpublished); In re R.A.M. , 228 N.C. App. 568, 749 S.E.2d 110, 2013 WL 4005847 at *1-2, slip op. at *3-6 (2013) (unpublished); In re P.R.B., Jr., III , 204 N.C. App. 595, 696 S.E.2d 925, 2010 WL 2367236 at *5, slip op. at *10-11 (2010) (unpublished); In re S.N.W. , 207 N.C. App. 377, 699 S.E.2d 685, 2010 WL 3860906 at *1-2, slip op. at *3-5 (2010) (unpublished).
In re L.V. disavowed this routine procedure, and signaled a significant shift in our jurisprudence of cases arising under Rule 3.1 of the North Carolina Rules of Appellate Procedure. In In re L.V. , our Court held for the first time that "[n]o issues have been argued or preserved for review in accordance with our Rules of Appellate Procedure" when *581 a respondent's appellate counsel files a no-merit brief that complied with Rule 3.1(d) and respondent fails to "exercise her right under Rule 3.1(d) to file a pro se brief." Id. at ----, 814 S.E.2d at 928-29, slip op. at *2. To support its decision, the In re L.V. court cites Judge Dillon's recent concurrence in State v. Velasquez-Cardenas , --- N.C. App. ----, 815 S.E.2d 9 (2018) (Dillon, J., concurring): "Rule 3.1(d) does not explicitly grant indigent parents the right to receive an Anders -type review of the record by our Court, which would allow our Court to consider issues not explicitly raised on appeal." Velasquez-Cardenas , --- N.C. App. at ----, 815 S.E.2d at 20 (italics in original). I note that a concurring opinion is not binding on our Court, and also that the cited quotation was dicta, and therefore not controlling authority. See Trustees of Rowan Tech. College v. J. Hyatt Hammond Assocs., 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is obiter dictum and later decisions are not bound thereby.") (citations omitted). The In re L.V. court did not address our Court's previous case law, which consistently conducted an Anders review of the record when appellate counsel complies with Rule 3.1(d), even if the appellant does not exercise her right under Rule 3.1(d) to file a pro se brief.
I believe that In re L.V. 's interpretation of Rule 3.1(d) affects parents' interest in the accuracy and justice of a decision to terminate their parental rights, and is inconsistent with the purposes of our juvenile code. See Little v. Little , 127 N.C. App. 191, 192, 487 S.E.2d 823, 824 (1997) ("A parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one.") (citation, quotation marks, and alteration omitted). Therefore, I believe In re L.V. is an anomaly in our case law that must be corrected to ensure that the fundamental right to a parental relationship is not terminated other than as permitted by law. However, I concur in the result only because In re Civil Penalty requires me to follow the divergent path that the Court has taken. In re Civil Penalty , 324 N.C. at 384, 379 S.E.2d at 37.

We use pseudonyms throughout the opinion for ease of reading and to protect the juveniles' identities.

Respondent is not the father of Brett, and Brett is not a party to this appeal.

The juveniles' mother is not a party to this appeal.

DSS presented Respondent with a June 2017 court order, stating it would "reinstat[e] respondent father's visitation provided he is able to provide a clean drug screen."

The date of Respondent's release is not clear from the testimony; however, the trial court found as fact the West Virginia Department of Corrections released Respondent in May 2017.