IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-427

Filed: 20 October 2020

Perquimans County, Nos. 16CRS000382, 17CRS000003

STATE OF NORTH CAROLINA

v.

MICHAEL RAY WATERFIELD, Defendant.


Appeal by Defendant from judgment entered 7 November 2018 by Judge Marvin K. Blount III in Perquimans County Superior Court. Heard in the Court of Appeals 31 October 2019.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Amy Bircher, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for the Defendant.*


DILLON, Judge.

One of the most fundamental concepts in criminal law is *mens rea*, the guilty mind. Historically, our society punished people for committing a crime for committing certain acts if they had some intent to commit the act.

Over time, this *mens rea* requirement has loosened. We have seen the rise of *strict* liability crimes, crimes that do not have an intent element. One class of crimes where strict liability has flourished is so-called regulatory crimes, meaning criminal

offenses that have no common law analogue and are enacted to encourage behavior that advances the public welfare.

This case involves several of these regulatory crimes.

The General Assembly enacted legislation authorizing the Marine Fisheries Commission and its Director to regulate coastal fishing. The legislature also provided that any violation of a Commission rule was a misdemeanor criminal offense. Pursuant to its authority, the Commission enacted rules prohibiting fisherman from leaving gill nets and crab pots unattended for a certain amount of time.

Defendant Michael Waterfield, a fisherman, was convicted of violating these regulations after he left gill nets and crab pots unattended for too long. Defendant argued that he is not criminally liable because he lacked any *mens rea* – or intent – to break the Commission rule. He claims he was sick and had to leave his equipment.

As explained below, Defendant has presented a series of compelling arguments for why the proliferation of these strict liability crimes undermines foundational principles of our State's criminal law jurisprudence. But as an intermediate appellate court, we are bound to follow controlling precedent. Under that precedent, these offenses are strict liability crimes that do not require the State to prove intent. If the law concerning these sorts of strict liability regulatory offenses should be changed, that change must come from our Supreme Court or from our General Assembly.

I. Facts and Procedural History

Defendant is a licensed commercial fisherman. In late 2016, a Marine Patrol officer was on boat patrol and came across an unattended gill net. The officer identified the net as belonging to Defendant because it had his name and boat number on it.

A marine fisheries proclamation in effect at the time required a person operating this type of gill net to remain within 100 yards of the net. The officer observed the area but did not see anyone in the vicinity of the net.

Somewhere between thirty minutes and one hour later, Defendant approached the officer and asked why the officer was near his net. The officer then gave Defendant a citation for an unattended gill net.

An hour later, the officer found crab pots with markers identifying them as belonging to Defendant. The officer pulled up one of the pots and saw that there were dead and decomposing crabs inside.

Several days later, the officer returned Defendant's crab pots to the water with plastic tags on the pots so that they could not be opened without cutting the tags off. The officer returned to check on the pots seven days later and found that all the tags were still in place, indicating that the crab pots had not been fished.

The officer cited Defendant for two violations of marine fisheries regulations: one for leaving crab pots in the water for more than five consecutive days and another

for leaving crab pots containing edible species not fit for human consumption. The officer used a form citation for these offenses, a form that contained language that Defendant was being charged with committing these regulatory violations "unlawfully and willfully."

Defendant was convicted of all charges in district court and appealed to superior court. During his jury trial in superior court, Defendant explained that, as for the unattended gill net, he was struggling with throat cancer and, after setting out his nets, he got sick and had to go home. He further explained that he got into an automobile accident on the way home. As a result of these unfortunate events, Defendant was unable to return and retrieve one of his nets.

As for the crab pots, Defendant testified that he did fish those pots and that he "cut the tags off," despite the officer's testimony to the contrary. On cross-examination, Defendant acknowledged that he had a number of past violations for similar failures to retrieve gills nets or crab pots. He explained that, given the scope of marine fisheries regulations, "[i]f you go out and fish, you gonna get tickets."

Because there were no pattern instructions for these regulatory offenses, the trial court proposed to instruct the jury on the elements of the offenses by tracking the specific language in the applicable regulations or proclamations. The regulations did not include any intent element. Defendant did not object or request any additional instructions.

After closing arguments, the trial court asked Defendant's counsel, "is there a contention that the law is something different than what has been provided to the Court?" Defense counsel responded that he was "just arguing the charging document," which presumably was a reference to the use of the phrase "unlawfully and willfully" in the citation. The trial court then stated, "What I've been provided, I guess, from the law is the elements of the crime do not require willfulness." The trial court then instructed the jury using the language of the applicable provisions and did not instruct the jury that these criminal offenses required proof of any form of criminal intent.

The jury convicted Defendant of the unattended gill net offense and the offense of leaving crab pots in the water for more than five days. The jury acquitted him of the second crab pot violation. The trial court consolidated the two convictions for judgment and sentenced Defendant to 20 days in jail, suspended for one year of supervised probation, and a $200 fine. Defendant appealed.

## II. Analysis

### A. Strict liability for the charged offenses

Defendant first argues that the trial court committed plain error by failing to instruct the jury that the State must prove his violations were willful. He contends

that the offenses with which he was charged must include some form of *mens rea* and cannot be strict liability offenses.

Defendant concedes that these arguments were not preserved by request or objection at trial and thus we review only for plain error. N.C. R. App. P. 10(a)(4); *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Plain error should be "applied cautiously and only in the exceptional case" where the errors "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 516-17, 723 S.E.2d at 333.

Whether a particular offense is a strict liability offense is a question of law that this Court reviews *de novo*. *See State v. Watterson*, 198 N.C. App. 500, 503, 679 S.E.2d 897, 899 (2009). As a leading criminal law treatise observes, "[f]or several centuries (at least since 1600) the different common law crimes have been so defined as to require, for guilt, that the defendant's acts or omissions be accompanied by one or more of the various types of fault (intention, knowledge, recklessness or—more rarely—negligence); a person is not guilty of a common law crime without one of these kinds of fault." 1 Wayne R. LaFave, Substantive Criminal Law § 5.5, *Strict Liability* (3d ed. 2017). "But legislatures, especially in the 20th and 21st centuries, have often undertaken to impose criminal liability for conduct unaccompanied by fault." *Id.*

Our General Assembly is among the state legislatures that began imposing strict liability over the last century-and-a-half. When challenges to these strict liability crimes arrived at our Supreme Court, that Court held that it is "within the power of the Legislature to declare an act criminal irrespective of the intent of the doer of the act. The doing of the act expressly inhibited by the statute constitutes the crime." *State v. Hales*, 256 N.C. 27, 30, 122 S.E.2d 768, 771 (1961). The determination of whether "criminal intent is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute in view of its manifest purpose and design." *Id.*

Our Supreme Court later refined these principles in the context of what are often called "public welfare" crimes. *See Watson Seafood & Poultry Co. v. George W. Thomas, Inc.*, 289 N.C. 7, 13, 220 S.E.2d 536, 541 (1975). In *Watson*, the Court addressed a traffic law prohibiting passing another vehicle at a railway crossing or highway intersection. *Id.* The Court explained that "it is not a violation of due process to punish a person for certain crimes related to the public welfare or safety even when the person is without knowledge of the facts making the act criminal. This is particularly so when the controlling statute does not require the act to have been done knowingly or willfully." *Id.* at 14, 220 S.E.2d at 541-42 (citations omitted).

The Court focused on several aspects of the traffic law that supported a strict-liability interpretation. First, the Court noted that the General Assembly did not

include an express intent element, such as the words "knowingly" or "willfully" often found in criminal statutes. *Id.* at 15, 220 S.E.2d at 542. Second, the Court observed that the law was a "safety statute enacted by the Legislature for the public's common safety and welfare." *Id.* The Court also explained that the offense fell into a category for which the punishment is typically "a small fine." *Id.* Finally, the Court noted that proving "intent or guilty knowledge would make it impossible to enforce such laws in view of the tremendous number of petty offenses growing out of the host of motor vehicles upon our roads." *Id.* at 14, 220 S.E.2d at 542.

Cases from this Court have applied the *Watson* reasoning to many different "public welfare" offenses, including offenses related to conservation of wildlife. *See, e.g.*, *State v. Ballance*, 218 N.C. App. 202, 217, 720 S.E.2d 856, 867 (2012). Applying that precedent here, if the offenses with which Defendant was charged were contained entirely within our General Statutes, we could readily hold that these are strict liability crimes.

The State charged Defendant with violating a marine fisheries proclamation prohibiting "unattended gill nets with a stretched mesh length of 3 inches through 3 ¾ inches" and a marine fisheries regulation making it "unlawful to leave pots in any coastal fishing waters for more than five consecutive days, when such pots are not being employed in fishing operations, except upon a timely and sufficient showing of hardship." *See* 15A NCAC 3I.0105(b); Proclamation M-23-2016.

These offenses are public welfare laws designed to protect our marine fisheries; they carry minimum punishments, in most cases resulting only in a fine; they are the type of routine, minor offense that could prove impossible to enforce if the State had to gather evidence of intent; and, most importantly, the General Assembly easily could have included an intent element for these offenses but did not do so. All of these factors weigh strongly in favor of strict liability.

But this case is not so simple. Here, our General Assembly did not enact a self-contained criminal law—it enacted legislation *authorizing the Marine Fisheries Commission* to regulate coastal fishing and then provided that violations of Commission regulations could be punished as a low-level misdemeanor. N.C. Gen. Stat. §§ 113-182; 113-135 (2016). The legislature also permitted the Commission to delegate to the Fisheries Director the authority to issue proclamations that are, in effect, Commission regulations. N.C. Gen. Stat. § 113-221.1. As a result of this statutory delegation, the General Assembly could not know what particular conduct would be criminalized by this statute; that depends on what the Marine Fisheries Commission and its director choose to regulate.

Defendant contends that this is the fatal flaw in the State's case. He asserts that there "is nothing in the context of the enabling statutes which suggests it was the 'manifest purpose and design' of the General Assembly" to impose strict liability. After all, the General Assembly did not even know what rules might one day be

created under this delegation of authority.

But, to be fair, the so-called enabling statute—the one delegating this regulatory authority to the Commission—is not the key place to look. The operative statute is N.C. Gen. Stat. § 113-135, which criminalizes the conduct at issue: "Any person who violates any provision of this Subchapter or any rule adopted by the Marine Fisheries Commission or the Wildlife Resources Commission, as appropriate, pursuant to the authority of this Subchapter, is guilty of a misdemeanor . . . ." N.C. Gen. Stat. § 113-135(a).

The General Assembly could have included an intent element in this criminal provision. For example, the legislature could have imposed criminal liability on any person who *willfully* violates the Commission's rules. Or the legislature could have established a default *mens rea*, for example by stating that if a rule does not provide a different level of intent, the defendant must be shown to have acted willfully to establish a violation of the rule.

These examples are not abstract ideas—as the parties point out in their briefing, the General Assembly has contemplated this sort of legislation before. Indeed, one proposed bill was entitled "An act to make changes to future criminal laws related to regulatory offenses . . . that do not specify criminal culpability" and would have created a default *mens rea* of recklessness for regulatory crimes like the ones at issue in this case. *See* H.B. 1010 § 2, 2019 Session (filed 25 April 2019). That

the legislature has so many means to include an intent element in these criminal offenses, but still chose not to do so, weighs in favor of concluding these are strict liability offenses.

Moreover, other accompanying statutes support an interpretation that does not include an intent element. For example, the statute authorizing the Fisheries Director to issue proclamations states that "persons who may be affected by proclamations issued by the Fisheries Director are under a duty to keep themselves informed of current proclamations" and it is "no defense in any criminal prosecution for the defendant to show that the defendant in fact received no notice of a particular proclamation." N.C. Gen. Stat. § 113-221.1(c). This statutory language demonstrates that the General Assembly contemplated the proof that would be required in criminal prosecutions of these regulations. Although the legislature chose to address certain issues, such as the obligation to know the law, it chose not to enact an intent element.

Moreover, there is nothing particularly unusual about the General Assembly's decision not to include an intent element for these offenses. These regulatory offenses have no common law analogue; they are designed to cultivate and conserve our State's marine resources. These types of "public welfare" offenses often do not include an intent element. This is because a violation of these offenses "impairs the efficiency of controls deemed essential to the social order as presently constituted." *Morissette v. United States*, 342 U.S. 246, 256 (1952). With the rise of the administrative state and

corresponding regulatory regimes, courts across our nation began construing these regulatory crimes "which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime." *Id.*

Equally important, violations of the Marine Fisheries Commission regulations and proclamations are minor criminal offenses—low-level misdemeanors that will typically result in a fine and will lead to an active sentence only in exceedingly rare cases for defendants with many prior convictions. N.C. Gen. Stat. § 113-135.

Finally, these offenses fall within the category of regulatory crimes for which an intent element could "make it impossible to enforce such laws in view of the tremendous number of petty offenses." *See Watson*, 289 N.C. at 14, 220 S.E.2d at 542. Requiring the State to launch an investigation into every person who unlawfully leaves a crab pot or gill net unattended and to gather sufficient evidence to prove beyond a reasonable doubt that the violation was willful could render enforcement of these minor offenses impractical for the State. This, too, is a key factor in why our Supreme Court and other courts have interpreted the lack of an express intent element in these regulatory crimes as evidence of an intent to impose strict liability. *Id.*; *see also Morissette*, 342 U.S. at 256.

In sum, we hold that the criminal offenses charged in this case under N.C. Gen. Stat. § 113-135 are strict liability regulatory offenses that do not require the State to prove intent. But we note that our holding is not an endorsement of these strict

liability crimes. Defendant's appellate brief lays out in compelling detail why our State's criminal laws historically have required an intent element, and why the ever-expanding morass of regulatory crimes is undermining the fundamental notion that *mens rea* is a necessary component of our State's criminal jurisprudence. But we "lack the authority to change the law on the ground that it might make good policy sense to do so." *Fagundes v. Ammons Dev. Grp., Inc.*, 251 N.C. App. 735, 739, 796 S.E.2d 529, 533 (2017).

### B. Failure to instruct on willfulness

Defendant next argues that, even if the charged offenses are strict liability crimes, the State was required to prove willfulness in this case because the indictment alleged that Defendant acted willfully. Again, Defendant concedes that he did not raise this argument in the trial court. We therefore review for plain error.

There is logical appeal to Defendant's argument—after all, if the State charges a defendant with willfully violating a regulation, should the State not be required to prove that charge? But we are again constrained by controlling precedent. What happened in this case has happened before. In *State v. Clowers*, the State charged the defendant with willfully driving while impaired because "the charging officer did not cross out the word 'willfully' on the uniform citation" although, as in this case, "willfulness is not an element of the crime." 217 N.C. App. 520, 529, 720 S.E.2d 430, 437 (2011). The defendant presented a defense based on the State's failure to prove

willfulness and requested a jury instruction on willfulness. The trial court denied that request because willfulness was not an essential element of the charged offense.

This Court found no error in *Clowers*, holding that "the inclusion of 'willfully' was beyond the essential elements of the offense" and thus the trial court properly disregarded it as "surplusage." *Id.* at 529-30, 720 S.E.2d at 437. The Court further explained that the trial court *could not* have instructed the jury on willfulness because the trial court's duty is to instruct the jury on the law and "that instruction would not have been supported by law." *Id.*

The facts in *Clowers* are indistinguishable from those in this case. We are therefore constrained to reject this argument. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989). Accordingly, we find no error in the trial court's instructions to the jury.

### III. Conclusion

We find no error in the trial court's judgments.

NO ERROR.

Judges DIETZ and YOUNG concur.